DONNA YEAGER *v.* MARIA ALVAREZ ET AL.
(SC 18513)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan and Harper, Js.

Argued September 8—officially released November 22, 2011

*Wesley W. Horton*, with whom were *Karen L. Dowd* and, on the brief, *Michael D'Amico* and *Brendon P. Levesque*, for the appellant (plaintiff).

*Richard F. Wareing*, for the appellees (defendants).

*William F. Gallagher* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Jack G. Steigelfest* and *Claudia Baio* filed a brief for the Connecticut Defense Lawyers Association as amicus curiae.

*Opinion*

HARPER, J. This appeal requires us to determine whether the trial court properly struck from the record as a sanction for a discovery violation an offer of compromise that had not been accepted within the statutory period under General Statutes § 52-192a. The plaintiff, Donna Yeager,[1] appeals[2] from the judgment of the trial court, challenging its decisions granting the pretrial motion of the defendants, Maria Alvarez and Benito Alvarez,[3] to strike the offer of compromise and denying the plaintiff's posttrial motion for interest after the jury returned a verdict in her favor in an amount exceeding the offer of compromise. The plaintiff claims that the trial court improperly contravened the mandatory imposition of interest under § 52-192a and that, even if the court had authority to strike the offer, such a sanction was improper in this case. We hold that the trial court's striking of the offer of compromise was within the scope

---

[1] Priority Care, Inc., the plaintiff's employer, joined the litigation as an intervening plaintiff but is not a party in this appeal.

[2] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] The plaintiff named Benny's Used Cars and/or Benny's Auto Repair as entities through which Benito Alvarez does business and named those entities separately as defendants. For purposes of convenience, we refer herein to Maria Alvarez and Benito Alvarez as the defendants.

of its judicial authority but that doing so in this case was an abuse of discretion. We therefore reverse in part the judgment of the trial court.

The record reveals the following procedural history and uncontested facts. On September 7, 2006, Maria Alvarez, driving a vehicle owned by Benito Alvarez' business, struck the plaintiff's vehicle from behind. The plaintiff filed a complaint on April 13, 2007, alleging that she had sustained serious and permanent injuries as a result of the defendants' negligence and that these injuries, principally to her back, had resulted in significant and potentially ongoing medical expenses.

During pretrial litigation, the defendants posed a series of interrogatories; of particular relevance to this appeal are interrogatories number six and seventeen. Interrogatory number six inquired: "When and from whom did you last receive any medical attention for injuries alleged to have been sustained as a result of the incident alleged in your complaint?" Interrogatory number seventeen asked the plaintiff to "[l]ist each item of expense which you claim to have incurred as a result of the incident alleged in your complaint, the amount thereof, and state the name and address of the person or organization to whom each item has been paid or is payable."

On August 8, 2007, the plaintiff responded to the interrogatories, providing the following answer to interrogatory number six: "Treatment was last received from Dr. [Abraham] Mintz on July 18, 2007." Accompanying her interrogatory responses, the plaintiff supplied, inter alia, medical treatment records, including a report from Mintz, a neurosurgeon, dated March 5, 2007, indicating that, "[a]t this point, I recommend that [the plaintiff] undergoes a lumbar epidural steroid injection, if this is not helpful, then she will be a candidate for plasma disc decompression [preceded] by discography."

On August 29, 2007, the plaintiff underwent two consecutive surgeries to her back, a discography performed by Rahul Anand, a physician trained in anesthesiology and pain medicine, and a plasma disc decompression performed by Mintz. In September and October, 2007, and September, 2008, the plaintiff submitted supplemental discovery materials. At none of these points did the plaintiff update her response to interrogatory number six to account for the August 29, 2007 surgeries. The plaintiff's updates did contain, however, the following information relating to the surgery. A November 13, 2006 report by Robert Kennon, an orthopedic surgeon who was treating the plaintiff for knee and back pain, indicated that "I really do not believe that [the plaintiff] has a problem with her neck or back that is amenable to any treatment that I can provide," and he recommended that the plaintiff seek chiropractic treatment and a second opinion from another orthopedic surgeon. A December 27, 2006 consultation report from Jarob Mushaweh, a neurosurgeon, similarly concluded that "her condition is not amenable to surgical management."[4] A July 18, 2007 report by Mintz, following up on his earlier report presenting surgery as a potential future option, indicated that "I explained to [the plaintiff that] she is a candidate for plasma disc decompression in her lumbar spine preceded by discography. She wants to proceed with both and arrangements will be made for them."

An updated list of expenses, submitted in response to interrogatory number seventeen, included $6365 owed to Anand for services performed on August 29, 2007, and $29,898 owed to Mintz for services performed from January 19, 2007, to October 5, 2007. Included with this updated answer was an itemized bill from

---

[4] The record does not make clear precisely when this report was disclosed, but the defendants' reliance on the report at oral argument before the trial court and the report's admission into evidence at trial indicate that it was timely disclosed.

Mintz containing two entries dated August 29, 2007, one for $19,800 and the other for $7500. A report from Anand dated August 29, 2007, described a "provocative lumbar discography" he had performed on the plaintiff. A September 12, 2007 letter from Mintz, on which Anand was copied, indicated that the plaintiff "states that she had a terrible time after the surgery with a lot of pain in her low back, but is slowly getting better."

On December 3, 2007, the plaintiff submitted an offer of compromise to the defendants pursuant to § 52-192a, proposing to settle the case for $300,000. The defendants did not accept the offer during the ensuing thirty day period provided for by § 52-192a (a).

On February 22, 2008, the plaintiff disclosed a recently received report from Mintz, which detailed the disc decompression surgery he had performed on August 29, 2007. On October 2, 2008, the defendants filed a motion requesting an extension of time to accept the plaintiff's December 3, 2007 offer of compromise or, alternatively, that the offer be stricken from the record because the plaintiff had failed to meet her continuing duty of disclosure under Practice Book § 13-15 and had not disclosed the surgery performed by Mintz until after the time for accepting the offer of compromise had expired.

The trial court heard oral argument on the motion, during which the defendants argued, inter alia, that the plaintiff had received conflicting recommendations about the appropriateness of surgery, that Mintz' recommendation of surgery was not clear evidence that a surgery actually occurred and that they had interpreted Mintz' September 12, 2007 letter as referring to the surgery performed by Anand, not by Mintz. The defendants' counsel acknowledged, however, that he had failed to notice the plaintiff's October disclosure of Mintz' bill and disavowed any claim that the plaintiff

had acted in bad faith.[5] The trial court found that a reader would construe Mintz' September 12, 2007 letter as referring to the surgery performed by Anand but that, "based on [Mintz'] bill, if someone looked at the bill they would have asked what this bill was for [August 29], 2007." Ultimately, the trial court concluded that, "based on a bit of conflicting information and based on the fact that there was no direct information given that . . . Mintz had performed the surgery on [August 29, 2007]," the defendants' motion should be granted with respect to their alternate ground for relief, and it struck the plaintiff's offer of compromise.

The jury returned a verdict in favor of the plaintiff and awarded her $1,380,240 in damages. The court then denied the plaintiff's motion for $238,082.04 in interest retroactively accrued on the award, noting that "no valid offer of compromise exists in this file." This appeal followed.

We begin by considering the plaintiff's claim that the trial court lacked the authority to strike an otherwise valid offer of compromise from the case file. The scope of judicial authority is a matter of law over which we exercise plenary review. *Burton* v. *Mottolese*, 267 Conn. 1, 25, 835 A.2d 998 (2003), cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158 L. Ed. 2d 983 (2004). To the extent

---

[5] The defendants' counsel stated: "I think it's still a question mark we could have determined something besides the discograph you've heard, but I don't believe that's the case other than I will admit, Your Honor, that we did obtain billing for $27,000 for . . . Mintz on August 29, 2007. We had—we—we got that. I missed that, Your Honor. I missed that, that's—that's my fault." In response to argument by the plaintiff's counsel that the plaintiff had disclosed Mintz' report immediately after receiving it, the defendants' counsel stated: "And I am not—just to be clear, Your Honor—I'm not suggest—I'm not here arguing that [plaintiff's counsel] hid information from us in terms of that report." This concession marked a shift from the position that the defendants had adopted in an October 2, 2008 memorandum accompanying their motion regarding the offer of compromise, in which they had asserted that "the plaintiff hid from the defendants the fact that she had undergone surgery for over five months . . . ."

that this inquiry involves examining § 52-192a and provisions of the rules of practice, it presents an issue of statutory interpretation over which we likewise exercise plenary review. *Mayfield* v. *Goshen Volunteer Fire Co.*, 301 Conn. 739, 744, 22 A.3d 1251 (2011).

The trial court's authority to impose sanctions derives from the court's inherent powers. It is long established that as a consequence of "the judiciary's constitutional power and independence . . . courts have an inherent power, independent of statutory authorization, to prescribe rules to regulate their proceedings and facilitate the administration of justice as they deem necessary." *State* v. *Clemente*, 166 Conn. 501, 514, 353 A.2d 723 (1974). This rule-making authority, moreover, accords with the legislature's provision that the Superior Court "may declare rights and other legal relations"; General Statutes § 52-29 (a); in the course of any action or proceeding and also "may make such orders and rules as they may deem necessary or advisable to carry into effect the provisions of this section." General Statutes § 52-29 (b).

Exercising this rule-making authority, the judges of the Superior Court have adopted rules of practice, which explicitly authorize judges to impose sanctions in certain situations. *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 10, 776 A.2d 1115 (2001). Practice Book § 13-14 (a) provides in relevant part that if a party has failed substantially to comply with a discovery order, "the judicial authority may, on motion, make such order as the ends of justice require." The rule further provides that "[s]uch orders may include the following: (1) The entry of nonsuit or default against the party failing to comply . . . (5) If the party failing to comply is the plaintiff, the entry of a judgment of dismissal."[6] Practice Book § 13-14 (b).

---

[6] The complete text of Practice Book § 13-14 provides: "(a) If any party has failed to answer interrogatories or to answer them fairly, or has intentionally answered them falsely or in a manner calculated to mislead, or has failed

These rules, moreover, do not necessarily demarcate the outer limits of the trial court's inherent powers. We have long recognized that, even "apart from a specific rule of practice authorizing a sanction, the trial court has the inherent power to provide for the imposition of reasonable sanctions, to compel the observance of its rules." (Internal quotation marks omitted.) *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, supra, 257 Conn. 9; see also *Maris* v. *McGrath*, 269 Conn. 834, 844, 850 A.2d 133 (2004) ("[s]ubject to certain limitations, a trial court in this state has the inherent authority to impose sanctions against an attorney and his client for a course of claimed dilatory, bad faith and harassing litigation conduct, even in the absence of a specific rule or order of the court that is claimed to have been violated" [internal quotation marks omitted]).

We hold that the Superior Court's rule-making and sanctioning authority encompasses the power to strike

to respond to requests for production or for disclosure of the existence and contents of an insurance policy or the limits thereof, or has failed to submit to a physical or mental examination, or has failed to comply with a discovery order made pursuant to Section 13-13, or has failed to comply with the provisions of Section 13-15, or has failed to appear and testify at a deposition duly noticed pursuant to this chapter, or has failed otherwise substantially to comply with any other discovery order made pursuant to Sections 13-6 through 13-11, the judicial authority may, on motion, make such order as the ends of justice require.

"(b) Such orders may include the following:

"(1) The entry of a nonsuit or default against the party failing to comply;

"(2) The award to the discovering party of the costs of the motion, including a reasonable attorney's fee;

"(3) The entry of an order that the matters regarding which the discovery was sought or other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

"(4) The entry of an order prohibiting the party who has failed to comply from introducing designated matters in evidence;

"(5) If the party failing to comply is the plaintiff, the entry of a judgment of dismissal.

"(c) The failure to comply as described in this section may not be excused on the ground that the discovery is objectionable unless written objection as authorized by Sections 13-6 through 13-11 has been filed."

an offer of compromise from the record as a penalty for violation of a discovery order. This sanction is not specifically mentioned in Practice Book § 13-14, but it falls well within the ambit of judicial power contemplated by both the court's inherent authority and the rules of practice. Significantly, the Practice Book, in § 13-14 (a) authorizes a trial court to penalize discovery violations by entering orders "as the ends of justice require." In fact, § 13-14 (b) contains sanctions even more severe than those imposed in this matter. These severe sanctions, which may strip a party of all prospect of prevailing, logically encompass a host of lesser penalties. Such milder sanctions may include orders that reduce a party's likelihood of success at trial; § 13-14 (b) (4), for example, allows a trial court to sanction a party by precluding the introduction of potentially dispositive evidence. Likewise, a sanction may properly diminish the financial gains from litigation, as in the imposition of motion costs and fees under § 13-14 (b) (2).

Similarly, if a trial court may impose a blanket judgment of nonsuit upon an otherwise valid action under Practice Book § 13-14 (b) (1), we see no reason why that court may not also nullify particular actions by parties in the course of litigation. The rules of practice, in keeping with the court's authority and duty to "impose reasonable bounds and order on discovery"; (internal quotation marks omitted) *Mulrooney* v. *Wambolt*, 215 Conn. 211, 222, 575 A.2d 996 (1990); have called upon judges to employ discovery sanctions "as the ends of justice require." Practice Book § 13-14 (a). We cannot say that this broad mandate may never permit a trial court to strike an offer of compromise from the record.

The plaintiff suggests that notwithstanding these considerations, the legislature has foreclosed the judicial remedy of striking the offer of compromise by mandating interest when the conditions set forth under § 52-

192a are satisfied, which they were in the present case. We disagree.

The plaintiff is correct that *after trial*, the statute directs the trial court to examine the record and, if the record reveals that the statutory conditions for offer of compromise interest are met, to award interest. See General Statutes § 52-192a (c) ("After trial the court shall examine the record to determine whether the plaintiff made an offer of compromise which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain specified in the plaintiff's offer of compromise, the court shall add to the amount so recovered eight per cent annual interest on said amount . . . ."). The trial court's function in this process is nondiscretionary. As we previously have noted, "[t]he statutory requirement of an examination of 'the record' makes it clear that the legislature intended to give the court a ministerial task"; *Connecticut Light & Power Co.* v. *Gilmore*, 289 Conn. 88, 135, 956 A.2d 1145 (2008); rather than an adjudicative one. *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 297 Conn. 105, 153, 998 A.2d 730 (2010) ("the application of § 52-192a does not depend on an analysis of the underlying circumstances of the case or a determination of the facts" [internal quotation marks omitted]). The trial court's role is "ministerial," however, only with respect to the limited task of considering a motion for interest pursuant to § 52-192a. In the absence of a clear legislative indication to the contrary, we do not read § 52-192a as intruding upon the trial court's traditional broad authority to oversee the process of litigation. See *State* v. *Leak*, 297 Conn. 524, 538, 998 A.2d 1182 (2010) ("[i]n determining whether or not a statute abrogates or modifies a common law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited

to matters clearly brought within its scope" [internal quotation marks omitted]). The court's authority properly encompasses the power and obligation to play a role in determining the scope of—and when appropriate to strike items from—the trial record prior to the motion for interest. Accordingly, in the present case there was no offer of compromise in the record for the trial court to consider and hence no conflict with the terms of § 52-192a.[7]

The trial court's authority to employ such a sanction is, moreover, consistent with the public policy goals expressed by § 52-192a. As we previously have observed, "[t]he purpose of § 52-192a is to encourage pretrial settlements and, consequently, to conserve judicial resources. . . . [T]he strong public policy favoring the pretrial resolution of disputes . . . is substantially furthered by encouraging defendants to accept reasonable offers of judgment." (Internal quotation marks omitted.) *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 297 Conn. 153. The statute advances this policy not only by threatening defendants with interest penalties, but also by requiring plaintiffs to file offers of compromise "not earlier than one hundred eighty days after service of process is made upon the defendant . . . ." General Statutes § 52-192a (a). This rule helps to ensure that defendants have sufficient opportunity to gather the information needed to make

---

[7] Because our case law clearly establishes that § 52-192a imposes a mandatory duty on the trial court when considering a postverdict motion for interest and likewise precludes a reading of the statute as implicitly restricting the court's pretrial authority, it is not necessary to parse the fine distinctions between legislation conferring substantive and procedural rights that the litigants in this case pursue. Were we faced with the more difficult problem of determining precisely where the court's inherent authority ends and the statute's power to assign the court a ministerial role begins—a question that may implicate the constitutional allocation of powers between the legislative and judicial branches—a deeper inquiry into the contours of substance and procedure would perhaps be warranted.

a reasoned decision whether to accept a settlement offer.[8] If a plaintiff deprives a defendant of material information sought through the discovery process, the benefits of the statutory waiting period vanish: based on a distorted view of the case arising from limited information or misinformation, the defendant may reject a reasonable offer of compromise or accept an unduly high offer. By striking offers of compromise, where the facts so warrant, the trial court can both enforce compliance with discovery obligations and advance the policy goal expressed in § 52-192a by facilitating reasonable settlement of litigation.

Having concluded that as a matter of formal authority the trial court may sanction discovery violations by striking from the record an otherwise valid offer of compromise, we turn now to the question of whether the trial court properly imposed such a penalty in this case. Traditionally, we considered the imposition of discovery sanctions as a question of proportionality reviewed for an abuse of judicial discretion. *Millbrook Owners Assn., Inc.* v. *Hamilton Standard,* supra, 257 Conn. 15. We recognized in *Millbrook Owners Assn., Inc.,* however, that "the broad abuse of discretion standard . . . is inaccurate, because it masks several different questions that in fact are involved in the question of when a court is justified in imposing such sanctions." Id., 17. The more nuanced analysis we adopted to cure this inaccuracy calls for a three-pronged inquiry: "First, the order to be complied with must be reasonably clear.

---

[8] This limitation was added to § 52-192a in 2005 along with numerous other changes to the statute. See Public Acts 2005, No. 05-275, § 4. With respect to this limitation, Senator Andrew J. McDonald explained: "[W]e have created a 180 day blackout period, if you will, at the beginning of the case so that the defendants have a meaningful opportunity to undertake discovery, so that they have a reasonable basis of facts and law to determine whether to accept an [o]ffer of [c]ompromise." 48 S. Proc., Pt. 14, 2005 Sess., p. 4413.

. . . This requirement poses a legal question that we will review do novo.

"Second, the record must establish that the order was in fact violated. This requirement poses a question of fact that we will review using a clearly erroneous standard of review.

"Third, the sanction imposed must be proportional to the violation. This requirement poses a question of the discretion of the trial court that we will review for abuse of that discretion." Id., 17–18.

The first of the inquiries in that case—the clarity of the underlying discovery order—is not at issue. The continuing duty to make discovery disclosures, upon which the trial court based its ruling, is clearly set forth in Practice Book § 13-15. The plaintiff, moreover, has not contested the fact that she had an underlying disclosure obligation that triggered the continuing duty under § 13-15, nor has she suggested that she was uncertain as to the fact or nature of her obligations. She has claimed instead that she *did* substantially comply with those obligations, and accordingly we treat the issue of clarity as conceded in this case.

We note, however, that although in their briefs and argument before *this* court the defendants have identified interrogatory number six as the specific—and apparently the single—source of the plaintiff's unmet discovery obligation, they never identified this request before the trial court as the basis of the plaintiff's duty to disclose, nor did that court make a specific finding regarding the source of the plaintiff's disclosure obligation. An examination of the information requested in interrogatory number six reveals a narrower disclosure duty than the one suggested by the defendants' claim. The defendants contend that the plaintiff failed to disclose the surgery performed by Mintz, but interrogatory number six only required the plaintiff to indicate when

and from whom she last received treatment, which would appear to have required her simply to provide a name and date, not the nature of the treatment. The potential for a discovery violation is created—and therefore also limited—by the interrogatory's formulation, and the severity of the breach cannot be gauged without reference to the underlying duty. The trial court should therefore have required the defendants to specifically identify the plaintiff's discovery obligations in order properly to determine the significance of any breach and the appropriate sanction. Nonetheless, because the plaintiff never contested that she had a duty to disclose the surgery performed by Mintz, we consider the trial court's sanction assuming that interrogatory number six required such information.

Under the second prong of *Millbrook Owners Assn., Inc.*, we next look to the record to determine whether the discovery order was violated. For purposes of this appeal, we assume, without deciding, that the trial court properly found that the plaintiff committed a discovery violation by failing to update her answer to interrogatory number six to include the August, 2007 surgery performed by Mintz.[9]

This brings us to the third prong of *Millbrook Owners Assn., Inc.*, under which we weigh the proportionality of the sanction to the violation using the traditional abuse of discretion standard. We are mindful that in the context of discovery sanctions, "great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness

---

[9] We decline to hold, as suggested by the amicus curiae Connecticut Trial Lawyers Association, that the plaintiff's failure to update her response to interrogatory number six per se was in full compliance with Practice Book § 13-15 because it was consistent with prevailing practices. According to the amicus, plaintiffs' attorneys routinely provide reports of medical providers to defendants upon receipt rather than refilling or updating interrogatories in advance of the receipt of any medical reports.

. . . . The determinative question for an appellate court is not whether it would have imposed a similar sanction but whether the trial court could reasonably conclude as it did given the facts presented. Never will the case on appeal look as it does to a [trial court] . . . faced with the need to impose reasonable bounds and order on discovery." (Citations omitted; internal quotation marks omitted.) *Mulrooney* v. *Wambolt*, supra, 215 Conn. 222.

In reviewing the proportionality of the trial court's sanction, we focus our analysis on the plaintiff's violation of her continuing duty to disclose under Practice Book § 13-15. See *Usowski* v. *Jacobson*, 267 Conn. 73, 93, 836 A.2d 1167 (2003). Our analysis of the plaintiff's violation is guided in turn by the factors we previously have employed when reviewing the reasonableness of a trial court's imposition of sanctions: "(1) the cause of the deponent's failure to respond to the posed questions, that is, whether it is due to inability rather than the willfulness, bad faith or fault of the deponent . . . (2) the degree of prejudice suffered by the opposing party, which in turn may depend on the importance of the information requested to that party's case; and (3) which of the available sanctions would, under the particular circumstances, be an appropriate response to the disobedient party's conduct." (Citation omitted.) *Pavlinko* v. *Yale-New Haven Hospital*, 192 Conn. 138, 144, 470 A.2d 246 (1984). Here, neither these factors nor the overarching principle of reasonable proportionality that they represent support the trial court's decision to strike the offer of compromise from the record.

There is no finding of intentional withholding of information or bad faith on the part of the plaintiff, and both at oral argument before the trial court and on appeal the defendants' counsel explicitly conceded that the plaintiff's failure to update her response to interrogatory number six was not deliberate or intended to sub-

vert the discovery process. Compare, e.g., *Briggs* v. *McWeeny*, 260 Conn. 296, 336, 796 A.2d 516 (2002) ("[T]he trial court found that the plaintiff had attempted to alter, destroy or conceal [the engineering] report . . . and that she had failed to disclose the report pursuant to her continuing duty to disclose. . . . In these circumstances, in which the misconduct involved the plaintiff's attempt to subvert the discovery process, we do not believe that it was unreasonable for the trial court to have disqualified the plaintiff.").

The trial court also made no finding that the defendants had suffered actual prejudice because of the plaintiff's failure to meet her continuing disclosure obligations. Indeed, the defendants never articulated any concrete source of prejudice, although their request for an extension of time implied a claim that they would have accepted the offer of compromise within the statutory period for acceptance had the surgery by Mintz been disclosed properly. In light of the information that the defendants did possess during the statutory acceptance period, this claim is unpersuasive. The information at issue related to the amount of damages, not liability. The plaintiff provided the defendants with regularly updated accounts of the amount of medical expenses incurred, the dates on which those expenses accrued and the names of the relevant medical service providers. Thus, the defendants could at the very least have readily ascertained the scope, magnitude and duration of the treatment costs incurred by the plaintiff. Wisely, they have not attempted to claim otherwise. Nor have the defendants explained what effect notice of the specific procedure of plasma disc decompression surgery, rather than generic notice of the expense the surgery entailed, might have had on their decision whether to accept the offer of compromise.

Even if the nature of the surgery performed by Mintz were significant aside from its cost, the defendants'

suggestion that they could not have readily deduced that Mintz performed a plasma disc decompression is belied by the information disclosed to them. The trial court found that there was "a bit of conflicting information and . . . there was no *direct* information given that . . . Mintz had performed the surgery"; (emphasis added); but the court properly did not find that the defendants lacked sufficient indirect information to conclude that surgery had occurred. Had the defendants actually reviewed all of the information that the plaintiff provided to them,[10] the only reasonable conclusion that they could have drawn was that Mintz had performed surgery on the plaintiff. Mintz' letter of July 18, 2007, stated that the plaintiff "is a candidate for plasma disc decompression in her lumbar spine preceded by discography. She wants to proceed with both and arrangements *will be made for them.*"[11] (Emphasis added.) The defendants concede that they were aware that, on August 29, 2007, Anand performed a discography on the plaintiff. Mintz' itemized billing statement contained two entries dated August 29, 2007, one for $19,800 and the other for $7500, amounts undoubtedly too high for consultations or nonsurgical procedures. The defendants offered no explanation for what they thought these expenses might represent, other than a plasma disc decompression, the surgery that they knew was scheduled to be performed, by Mintz, following a discography, which they knew occurred on the same day that Mintz charged the plaintiff more than $27,000. Providing further support for the conclusion that the only possible prejudice suffered by the defendants can be

[10] See footnote 5 of this opinion.

[11] The defendants have pointed to other physicians' earlier recommendations against surgery as evidence that it was doubtful whether plans for the Mintz surgery would come to fruition. The plaintiff's decision to pursue treatment from Mintz even after being rebuffed by two other surgeons, however, is more plausibly read as evidence of the plaintiff's persistent desire for treatment.

attributed to their own failure to read the discovery materials they requested, the defendants waited more than seven months after the plaintiff unambiguously disclosed Mintz' postoperative report in February, 2008, before filing the motion at issue.

Turning finally to the general appropriateness of the sanction in the context of this case, we bear in mind that "[t]he primary purpose of a sanction for violation of a discovery order is to ensure that the defendant's rights are protected, not to exact punishment on the [other party] for its allegedly improper conduct." (Internal quotation marks omitted.) *State* v. *Respass*, 256 Conn. 164, 186, 770 A.2d 471, cert. denied, 534 U.S. 1002, 122 S. Ct. 478, 151 L. Ed. 2d 392 (2001). In contrast, an interest award under § 52-192a is "admittedly punitive in nature," and it is this "punitive aspect of [§ 52-192a] that effectuates the underlying purpose of the statute," namely, to advance "[t]he strong public policy favoring the pretrial resolution of disputes . . . ." (Internal quotation marks omitted.) *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 297 Conn. 153. Given our disavowal of punishment of discovery violators as an end in itself and the countervailing strong public policy behind the awarding of interest on offers of compromise, we see nothing in the particular circumstances of this case that warrants imposing the potentially severe sanction of striking an offer of compromise in the absence of a finding of bad faith or significant prejudice.[12] While we hold that it is within the authority of

---

[12] We reject the defendants' contention that the trial court's sanction was not severe because striking the offer of compromise was a penalty of inherently uncertain magnitude at the time it was imposed: if the plaintiff had failed to recover a greater award at trial than was proposed in the settlement offer, the sanction would have become inconsequential. The uncertain impact of a penalty does not render it inherently reasonable or unreasonable—the consequences of excluding undisclosed evidence, for example, are necessarily speculative, but may nonetheless be proper. See Practice Book § 13-14 (b) (4). The court must, however, weigh the risk that the sanction's potential severity will come to fruition against the seriousness of the violation.

the trial court to strike offers of compromise from the record, we caution that this serious sanction is not to be employed lightly and was an abuse of discretion in this case.

The judgment is reversed in part as to the decisions granting the defendants' motion to strike the offer of compromise and denying the plaintiff's motion for offer of compromise interest, and the case is remanded with direction to grant the plaintiff's motion; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.