******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

FRANCIS ANDERSON *v.* COMMISSIONER
OF CORRECTION
(AC 35846)

Sheldon, Keller and Mullins, Js.

*Argued April 16—officially released July 21, 2015*

(Appeal from Superior Court, judicial district of
Tolland, Kwak, J.)

*James P. Sexton*, assigned counsel, with whom was
*Michael S. Taylor*, assigned counsel, for the appellant (petitioner).

*Mitchell S. Brody*, senior assistant state's attorney,
with whom, on the brief, were *Matthew Gedansky*,
state's attorney, and *Andrew Reed Durham*, assistant
state's attorney, for the appellee (respondent).

*Opinion*

KELLER, J. The petitioner, Francis Anderson, appeals following the habeas court's denial of his petition for certification to appeal from the judgment dismissing with prejudice his amended petition for a writ of habeas corpus. The petitioner claims that the court erred by denying his petition for certification to appeal and dismissing his amended petition with prejudice because (1) an order that the petitioner had violated, which precipitated the court's dismissal of his amended petition with prejudice, was not reasonably clear; (2) the court's dismissal of his amended petition with prejudice was not proportionate to the petitioner's violation of the order; and (3) the court committed plain error by failing to comply with Practice Book § 23-40 and General Statutes § 52-470. We agree with the petitioner's second claim and reverse the judgment of the court.[1]

The following facts and procedural history are relevant here. On March 3, 2011, the petitioner pleaded guilty to two counts of assaulting a peace officer in violation of General Statutes § 53a-167c.[2] The trial court, *Hon. Terence A. Sullivan*, judge trial referee, sentenced the petitioner to a total effective sentence of five years incarceration, to be served consecutively to any previous sentence he was serving.

On February 19, 2013, the petitioner filed an amended petition for a writ of habeas corpus.[3] On June 3, 2013, prior to the evidentiary portion of the petitioner's habeas trial, the habeas court, *Kwak, J.*, asked whether the parties wished to discuss any preliminary matters. The following exchange occurred on the record:

"[The Petitioner's Counsel]: Your Honor, another preliminary matter. My client is handcuffed and, absent any objection from the transporting correction officers, I'd ask that the—

"The Court: That's fine with me as long as the correction officers and the marshals are okay with removing the handcuffs. But, it's up to them.

"The Correction Officer: I have an issue with him being—him not being handcuffed.

"The Court: Okay.

"The Correction Officer: He's assaulted staff on a number of occasions, so I have an issue with that.

"The Court: All right, that's fine. I'm sorry, counsel, but that's—

"[The Petitioner's Counsel]: That's—

"The Court: Security is up to the marshals and the—

"The Petitioner: Excuse me. I got a problem with this officer.

"The Court: Sir—

"The Petitioner: I'm gonna leave. Come on. Let's go back to the facility.

"The Court: Sir, this is your petition. If you leave now, it's going to get dismissed with prejudice. Do you understand? All right. [Petitioner's counsel], I'm sorry, but your client just, for the record, left the courtroom. I advised him that, if he left today, this was his habeas trial and that it would be dismissed with prejudice and he disregarded my warning and left the courtroom. Anything to add, [petitioner's counsel]? . . .

"[The Petitioner's Counsel]: I would ask Your Honor to consider based on [the petitioner's] history—and part of the history is a conduct disorder, explosive temper issues—that Your Honor consider a dismissal without prejudice as opposed to with prejudice.

"The Court: Okay. Well, this is—I'm going to take his action as a deliberate bypass of his trial today, which was scheduled, and obviously the state has expended a lot of time and effort to bring him here as well as the counsel and the witnesses that were supposed to be called today. So, therefore, I'm going to deny your motion and dismiss his—his [amended] petition with prejudice."

On June 11, 2013, the petitioner filed a petition for certification to appeal, which the court denied on June 17, 2013. Subsequently, he filed the present appeal on July 5, 2013.

On November 26, 2013, the petitioner filed a motion for articulation, wherein he alleged that the habeas court had failed to provide sufficient facts and legal analysis upon which to base its dismissal of his amended petition with prejudice. Specifically, among other requests, he asked the court to: (1) articulate the legal authority it relied on to dismiss his amended petition with prejudice; (2) articulate the specific factual findings it relied on to dismiss his amended petition with prejudice; (3) address a number of specific inquiries, including whether he had received prior notice that actions delaying the habeas trial would result in a dismissal of his amended petition with prejudice and whether it had provided him with its full verbal warning before he left the courtroom; and (4) address why his alleged psychological impairments did not support a dismissal of his amended petition without prejudice.

The court granted the petitioner's motion for articulation. The court began by explaining that it relied on Practice Book §§ 14-3[4] and 23-29 (5)[5] to dismiss the petitioner's amended petition with prejudice on the basis of his failure to prosecute his claims.

In response to the petitioner's request that it articulate the specific factual findings it relied on to dismiss his amended petition with prejudice, the court stated: "The petitioner was aware the matter was on for trial

and was present in the courtroom with assigned counsel at the onset of trial. Counsel for the petitioner requested that the court permit the removal of the petitioner's handcuffs, absent any objection by the correction officers. The court indicated its willingness to have the handcuffs removed so long as the correction officers agreed to their removal. One of the correction officers indicated that the petitioner had assaulted staff on a number of occasions and opposed the removal of the handcuffs. The petitioner expressed that he had an issue with the correction officer who opposed removal of the handcuffs and then absented himself from the courtroom and proceedings, thereby failing to prosecute the claims in his habeas corpus petition.''

Next, in response to the petitioner's inquiry as to whether the petitioner had received adequate notice that dismissal with prejudice would result from any actions that delayed the habeas proceedings, the court stated that the petitioner was represented by counsel and the court's file contained all of the relevant notices and orders. Last, the court stated that it had warned the petitioner before he left the courtroom that it would dismiss his amended petition with prejudice if he exited the courtroom. The court provided no articulation in response to the petitioner's request for the court to address why the petitioner's alleged psychological impairments did not warrant dismissal of his amended petition without prejudice.[6]

On January 21, 2014, the petitioner filed a motion for further articulation, which the court denied. He subsequently filed a motion for review with this court on February 20, 2014. This court granted the motion for review, but denied the relief requested therein. This appeal followed.

We begin by setting forth the relevant standard of review. "In *Simms* v. *Warden*, 229 Conn. 178, 187, 640 A.2d 601 (1994), we concluded that . . . § 52-470 (b) prevents a reviewing court from hearing the merits of a habeas appeal following the denial of certification to appeal unless the petitioner establishes that the denial of certification constituted an abuse of discretion by the habeas court. In *Simms* v. *Warden*, 230 Conn. 608, 615–16, 646 A.2d 126 (1994), we incorporated the factors adopted by the United States Supreme Court in *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), as the appropriate standard for determining whether the habeas court abused its discretion in denying certification to appeal. This standard requires the petitioner to demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . A petitioner who establishes an abuse of discretion through one of the factors listed above must then demonstrate that the judgment of the

habeas court should be reversed on its merits. . . . In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." (Internal quotation marks omitted.) *Damato* v. *Commissioner of Correction*, 156 Conn. App. 165, 167, 113 A.3d 449, cert. denied, 317 Conn. 902, 114 A.3d 167 (2015).

The petitioner asserts that the court abused its discretion by denying his petition for certification to appeal, which requires us to examine the merits of his underlying claims. He contends that the court erred by dismissing his amended petition with prejudice because: (1) the court's order demanding that he remain in the courtroom or risk dismissal of his amended petition with prejudice was not reasonably clear; and (2) the court's dismissal of his amended petition with prejudice was too severe in proportion to his act of leaving the courtroom. Alternatively, he claims that the court committed plain error by failing to comply with Practice Book § 23-40[7] and General Statutes § 52-470.[8]

The petitioner's claim that the court's dismissal of his amended petition with prejudice constituted an unduly severe sanction for his act of leaving the courtroom is dispositive of the present appeal. Specifically, he contends that the court could have imposed other, less draconian sanctions in response to his act of leaving the courtroom. According to the petitioner, the court could have: ordered a brief recess and provided his counsel with an opportunity to meet with him and discuss the matter; permitted his counsel to proceed with the trial in his absence; rescheduled the trial and permitted him to be present at trial via an interactive audiovisual device; or, as his counsel had requested, dismissed his amended petition without prejudice. We conclude that the court abused its discretion by denying the petitioner's petition for certification to appeal and, under the circumstances of this case, by dismissing the petitioner's amended petition with prejudice because that sanction was too severe.

"It is well established that a court may . . . under its inherent power . . . impose sanctions in order to compel observance of its rules and orders . . . . The decision to enter sanctions . . . and, if so, what sanction or sanctions to impose, is a matter within the sound discretion of the trial court. . . . In reviewing a claim that this discretion has been abused the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . . [T]he ultimate issue is whether the court could reasonably conclude as it did. . . .

"At the same time, however, [our Supreme Court]

also ha[s] stated: [D]iscretion imports something more than leeway in decision-making. . . . It means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . In addition, the court's discretion should be exercised mindful of the policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court. . . . Our practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of procedure. . . . Therefore, although dismissal of an action is not an abuse of discretion where a party shows a deliberate, contumacious or unwarranted disregard for the court's authority . . . the court should be reluctant to employ the sanction of dismissal except as a last resort. . . . [T]he sanction of dismissal should be imposed only as a last resort, and where it would be the only reasonable remedy available to vindicate the legitimate interests of the other party and the court." (Citations omitted; internal quotation marks omitted.) *D'Ascanio* v. *Toyota Industries Corp.*, 309 Conn. 663, 670–72, 72 A.3d 1019 (2013).[9]

Furthermore, we acknowledge that "[t]he right to petition for a writ of habeas corpus is enshrined in both the United States constitution and the Connecticut constitution. See U.S. Const., art. I, § 9; Conn. Const., art. I, § 12. Indeed, it has been observed that the writ of habeas corpus holds an honored position in our jurisprudence. . . . The principal purpose of the writ of habeas corpus is to serve as a bulwark against convictions that violate fundamental fairness. . . . The writ has been described as a unique and extraordinary legal remedy. . . . It must never be forgotten that the writ of habeas corpus is the precious safeguard of personal liberty and there is no higher duty than to maintain it unimpaired." (Citations omitted; internal quotation marks omitted.) *Fine* v. *Commissioner of Correction*, 147 Conn. App. 136, 142–43, 81 A.3d 1209 (2013).

Turning to the circumstances of this case, we note the following. At the outset, the record lacks any evidence indicating that the petitioner, in leaving the courtroom, understood the gravity of his act. Although the record suggests that the petitioner heard the court's warning prior to exiting the courtroom, it is unclear whether he fully understood the consequences of his departure.[10] The court did not make any concerted effort to ensure that he was personally apprised of and understood the consequences. See id., 148 (respondent failed to make affirmative showing that court ensured that petitioner knew of and understood consequences of withdrawing prior petition with prejudice). The lack of such effort appears particularly incautious when, due to the petitioner's incarcerated status, the court still had the ability to attempt to communicate with him, and his counsel

represented to the court that the petitioner had psychological impairments. Furthermore, before the court dismissed the amended petition with prejudice, the petitioner's counsel was not provided with an opportunity to meet with the petitioner to discuss his actions and to explain the meaning of the court's warning. Although we do not condone the petitioner's inappropriate act of leaving the courtroom while the court was addressing him, we do not conclude that his discourteous and disruptive conduct was particularly egregious or that he expressed a "deliberate, contumacious or unwarranted disregard for the court's authority" on the basis of the record.[11] (Internal quotation marks omitted.) *D'Ascanio* v. *Toyota Industries Corp.*, supra, 309 Conn. 672; cf. *Fox* v. *First Bank*, 198 Conn. 34, 39–40, 501 A.2d 747 (1985) (dismissal did not constitute abuse of discretion where plaintiff persistently failed to comply with court order without explanation and court expended considerable judicial resources in attempt to accommodate plaintiff).

Furthermore, "[d]ismissal was not the only option available to vindicate the legitimate interests of the [respondent] and the court." *D'Ascanio* v. *Toyota Industries Corp.*, supra, 309 Conn. 683. At a minimum, the court could have called a brief recess to provide the petitioner's counsel with an opportunity to meet with the petitioner, advise him in regard to his actions, explain the court's warning to him, and potentially convince him to return to the courtroom.[12] If the petitioner remained steadfast in refusing to reenter the courtroom after his counsel conferred with him and explained to him the court's inclination to dismiss his amended petition with prejudice, the court then could have inquired into whether the petitioner's counsel was capable of proceeding with the habeas trial in the petitioner's absence. See *Saunders* v. *Commissioner of Correction*, 157 Conn. App. 257, 263,    A.3d    (2015) ("the physical presence of the petitioner is ordinarily not necessarily required [at his or her habeas trial]"). Additionally, the court could have considered rescheduling the trial or further considered the request by the petitioner's counsel to dismiss the petition without prejudice.[13] In summation, this was not a case wherein the "last resort" sanction of dismissal with prejudice was "the only reasonable remedy available to vindicate the legitimate interests of the [respondent] and the court." (Internal quotation marks omitted.) *D'Ascanio* v. *Toyota Industries Corp.*, supra, 309 Conn. 672.

For the foregoing reasons, we conclude that the habeas court abused its discretion by denying the petitioner's petition for certification to appeal and by dismissing his amended petition for a writ of habeas corpus with prejudice.

The judgment is reversed and the case is remanded for further proceedings in accordance with law.

In this opinion, the other judges concurred.

[1] Because we reverse the court's judgment and remand the matter on the basis of our conclusion that the court's dismissal of the petitioner's amended petition with prejudice was too severe, we need not reach the petitioner's remaining claims.

[2] The underlying convictions resulted from events that transpired on September 30, 2009, when the petitioner, while serving a prior sentence, assaulted two officers from the Department of Correction (correction officers).

[3] The petitioner initially filed a petition for a writ of habeas corpus on May 19, 2011.

[4] Practice Book § 14-3 provides: "(a) If a party shall fail to prosecute an action with reasonable diligence, the judicial authority may, after hearing, on motion by any party to the action pursuant to Section 11-1, or on its own motion, render a judgment dismissing the action with costs. At least two weeks' notice shall be required except in cases appearing on an assignment list for final adjudication. Judgment files shall not be drawn except where an appeal is taken or where any party so requests.

"(b) If a case appears on a docket management calendar pursuant to the docket management program administered under the direction of the chief court administrator, and a motion for default for failure to plead is filed pursuant to Section 10-18, only those papers which close the pleadings by joining issues, or raise a special defense, may be filed by any party, unless the judicial authority otherwise orders."

[5] Practice Book § 23-29 provides in relevant part: "The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that . . . (5) any other legally sufficient ground for dismissal of the petition exists."

[6] The petitioner also requested that the court articulate the following: the duration of the petitioner's prior efforts to bypass the habeas proceedings; whether the respondent, the Commissioner of Correction, would have been significantly prejudiced had the court rescheduled the habeas proceeding; whether the court balanced its need to sanction the petitioner for leaving the courtroom against his right to due process and to be heard; and whether any less severe sanctions were available for the court to impose, such as rescheduling the habeas proceeding or permitting the petitioner's counsel to speak with him in order to calm him down and return him to the courtroom. The court provided no response to the foregoing inquiries.

[7] Practice Book § 23-40 provides: "(a) The petitioner and, if they are not the same, the subject of the petition, shall have the right to be present at any evidentiary hearing and at any hearing or oral argument on a question of law which may be dispositive of the case, unless the petitioner, or the subject of the petition, as the case may be, waives such right or is excused by the judicial authority for good cause shown. If the petitioner is represented by counsel, the judicial authority may, but is not required to, permit the petitioner to be present at any other proceeding.

"(b) Notwithstanding any other provision of these rules, in a petition arising from a claim regarding conditions of confinement the physical appearance in court of the petitioner or the subject of the petition may, in the discretion of the judicial authority, be made by means of an interactive audiovisual device. Such audiovisual device must operate so that the petitioner, or the subject of the petition, his or her attorney, if any, and the judicial authority can see and communicate with each other simultaneously. In addition, a procedure by which the petitioner and his or her attorney can confer in private must be provided."

[8] General Statutes § 52-470 provides in relevant part: "(a) The court or judge hearing any habeas corpus shall proceed in a summary way to determine the facts and issues of the case, by hearing the testimony and arguments in the case, and shall inquire fully into the cause of imprisonment and thereupon dispose of the case as law and justice require."

[9] The petitioner argues that we should apply the standard promulgated by our Supreme Court in *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 776 A.2d 1115 (2001) (*Millbrook*), to review the propriety of the court's dismissal of his amended petition with prejudice. We disagree. In *Millbrook*, our Supreme Court stated: "[W]e conclude that the broad abuse of discretion standard that we have been employing *for the imposition of sanctions for violation of discovery orders*, and for our appellate review thereof, is inaccurate . . . . In order for a trial court's *order of sanctions for violation of a discovery order* to withstand scrutiny, three requirements must be met." (Emphasis added.) Id., 17. The foregoing language unequivo-

cally narrows the applicability of the *Millbrook* standard, which has been utilized almost exclusively for the purpose of reviewing the propriety of sanctions imposed by a court in response to discovery violations. See, e.g., *Yeager* v. *Alvarez*, 302 Conn. 772, 784, 31 A.3d 794 (2011); *Wyszomierski* v. *Siracusa*, 290 Conn. 225, 235, 963 A.2d 943 (2009). This court also has applied the *Millbrook* standard in cases wherein trial courts have imposed sanctions as a result of a party's failure to properly file a certificate of closed pleadings. See *Bongiovanni* v. *Saxon*, 99 Conn. App. 221, 226–27, 913 A.2d 471 (2007); *McHenry* v. *Nusbaum*, 79 Conn. App. 343, 351–53, 830 A.2d 333, cert. denied, 266 Conn. 922, 923, 835 A.2d 472, 473 (2003); *Burton* v. *Dimyan*, 68 Conn. App. 844, 846, 793 A.2d 1157, cert. denied, 260 Conn. 925, 797 A.2d 520 (2002). With the narrow applicability of the *Millbrook* standard in mind, we conclude that the general abuse of discretion standard, rather than the *Millbrook* standard, is the proper standard to employ in our examination of the habeas court's imposition of the sanction of dismissal with prejudice in this case.

[10] We note that the meaning of the phrase "with prejudice" may be unclear to a lay petitioner who has not had the opportunity to speak with his or her counsel. See *Taylor* v. *Commissioner of Correction*, 125 Conn. App. 624, 631, 11 A.3d 160 (2010) (*Beach, J.*, concurring and dissenting) (noting that habeas court's use of phrase "with prejudice" may be ambiguous), cert. denied, 300 Conn. 908, 12 A.3d 1005 (2011).

[11] In fact, the petitioner stated that he had an issue with one of the correction officers accompanying him to the courtroom. He did not express any animosity toward Judge Kwak or anyone else associated with the court.

[12] Although not precisely analogous to the present case, we note that the procedural history detailed in a number of our prior cases indicates that some judges in habeas matters have provided the petitioners' counsel with opportunities to contact petitioners who have failed to appear at habeas proceedings. See *Lewis* v. *Commissioner of Correction*, 121 Conn. App. 693, 695, 996 A.2d 1214 (2010) (noting that court called brief recess to permit petitioner's counsel to attempt to contact petitioner, who failed to appear at habeas trial), appeal dismissed, 304 Conn. 315, 39 A.3d 1104 (2012) (certification improvidently granted); *Moye* v. *Commissioner of Correction*, 110 Conn. App. 134, 136–37, 954 A.2d 240 (2008) (noting that court provided petitioner's counsel with one week to contact petitioner, who had failed to appear at habeas hearing, before considering respondent's motion to dismiss).

[13] We note that the respondent would not have been unduly prejudiced had the court selected any of those options. The record indicates that the respondent did not intend to call any witnesses to testify or to introduce any exhibits. Although we recognize that any delay in the habeas trial would have inconvenienced the respondent, whose attorney was present and prepared to proceed with the trial on June 3, 2013, we do not conclude that the respondent would have suffered undue prejudice had the court selected any option other than dismissing the petitioner's amended petition with prejudice.

In addition, although we recognize that the court also would have been inconvenienced by any delay in the habeas trial, we note the competing inefficiency and waste of scarce public resources that result when a court fails to make a concerted effort to move a case forward on the day on which it is scheduled.

--------------------