******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ALPHA BETA CAPITAL PARTNERS,
L.P. *v.* PURSUIT INVESTMENT
MANAGEMENT, LLC, ET AL.
(AC 41986)

Prescott, Devlin and D'Addabbo, Js.

*Syllabus*

The plaintiff, following the defendants' appeal from the trial court's judgment
in the plaintiff's favor, sought sanctions from the defendants for their
failure to comply with postjudgment discovery orders. The court had
previously granted the plaintiff's application for a prejudgment remedy,
and, thereafter, granted the plaintiff's postjudgment motions to increase
the judgment amount and for disclosure of assets to assist it with secur-
ing the additional amount of the judgment. The court ordered the defen-
dants to provide the plaintiff with additional documents, stating that if
the defendants failed to substantially comply with its order, S and C,
the individual defendants who operated the defendant companies, would
each be required to appear for an examination of judgment debtor.
Thereafter, after failing to produce many of the documents they were
required to disclose, S and C were ordered by the court to appear for
an examination of judgment debtor and, subsequently, the defendants
were ordered to provide the plaintiff with supplemental disclosures.
The court thereafter issued an order of sanctions against the defendants
for their failure to comply with the court's discovery orders, ordering
monetary sanctions comprised of attorney's fees and litigation costs,
and the defendants amended their appeal and this court severed this
claim from the appeal. *Held* that the court's order of sanctions met the
requirements that a trial court must deem satisfied before imposing
sanctions, and, therefore, the court's order did not constitute an abuse
of discretion: the court's order was reasonably clear, notwithstanding
the defendants' claim that there was neither a clear order nor a violation
of any such order, S and C were under oath when testifying during the
examination of judgment debtor, and, having sworn to provide truthful
testimony, understood that they were required to provide such testimony
during the proceeding; moreover, the trial court properly found that the
defendants violated the court's discovery order, as there was ample
evidence in the record, which purportedly contradicted the testimony
that S and C had provided at the examination of judgment debtor,
from which the trial court reasonably could have inferred that S and C
conducted themselves with obvious dishonesty; furthermore, the court's
order of sanctions was proportionate to the defendants' violation of the
court's discovery orders that occurred after the examination of judgment
debtor, because the court found that the defendants engaged in a continu-
ous practice of disobeying the court's discovery orders, the plaintiff
suffered harm, including attorney's fees and litigation costs, as a result
of the defendants' failure to provide documents that the court had
ordered them to disclose that were pertinent to the plaintiff's ability to
identify assets that could be used to satisfy the judgment, and the
defendants' failure to disclose the documents deprived the plaintiff of
information that it needed to collect on the judgment, part of which
was not secured by a prejudgment remedy, and the court's order of
sanctions was appropriate because it reimbursed the plaintiff for the
attorney's fees and other litigation costs that it incurred in order to
compel the defendants to provide it with certain documents that the
court had ordered they disclose, and that the plaintiff needed, to obtain
a remedy to which it was entitled, and, in the absence of the court's
order of sanctions, the plaintiff unfairly would have borne this cost.

Argued January 13—officially released July 7, 2020

*Procedural History*

Action to recover damages for, inter alia, breach of
contract, and for other relief, brought to the Superior

Court in the judicial district of Stamford-Norwalk and transferred to the Complex Litigation Docket, where the defendants filed a counterclaim; thereafter, the court, *Genuario, J.*, granted the plaintiff's application for a prejudgment remedy; subsequently, the matter was tried to the court, *Genuario, J.*; judgment in part for the plaintiff on the complaint and for the plaintiff on the counterclaim, from which the defendants appealed to this court; thereafter, the court, *Genuario, J.*, granted the plaintiff's motion for sanctions, and the defendants amended their appeal. *Affirmed.*

*Michael S. Taylor*, with whom was *Brendon P. Levesque*, for the appellants (defendants).

*James C. Graham*, with whom was *Dennis M. Carnelli*, for the appellee (plaintiff).

*Opinion*

PRESCOTT, J. This appeal involves a challenge to sanctions imposed by the trial court to remedy extensive discovery abuses by the defendants that frustrated the plaintiff's attempt to collect on a significant monetary judgment. The defendants, Pursuit Opportunity Fund I, L.P. (POF), Pursuit Opportunity Fund I Master Ltd. (POF Master), Pursuit Capital Management Fund I, L.P. (PCM), Pursuit Capital Master (Cayman) Ltd. (PCM Master), Pursuit Investment Management, LLC (PIM), Northeast Capital Management, LLC (Northeast), Anthony Schepis, and Frank Canelas, Jr.,[1] appeal from the trial court's order of sanctions, in which the court awarded the plaintiff, Alpha Beta Capital Partners, L.P., attorney's fees and litigation costs for the defendants' discovery abuses. On appeal, the defendants claim that the court's order of sanctions constituted an abuse of discretion because the order failed to meet the three requirements that a trial court must deem satisfied before imposing sanctions and that this court must analyze to determine whether the trial court's order constituted an abuse of discretion. See *Ridgaway* v. *Mount Vernon Fire Ins. Co.*, 328 Conn. 60, 70–71, 176 A.3d 1167 (2018) (citing *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 17–18, 776 A.2d 1115 (2001)).[2] We disagree with the defendants' claim and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to the defendants' claims on appeal. In September, 2015, the plaintiff "filed an application for a prejudgment remedy and a proposed summons and complaint against the defendants."[3] *Alpha Beta Capital Partners, L.P.* v. *Pursuit Investment Management, LLC*, 193 Conn. App. 381, 398, 219 A.3d 801 (2019) (*Alpha Beta I*), cert. denied, 334 Conn. 911, 221 A.3d 446 (2020). The plaintiff then filed a seven count amended substitute complaint against the defendants, alleging "(1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) unjust enrichment, (4) conversion, (5) statutory theft under General Statutes § 52-564, (6) violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and (7) civil conspiracy." Id.

In June, 2016, the trial court granted the plaintiff's application for a prejudgment remedy in the amount of $5,421,582. Id., 399. After a bench trial held later that year, "the court rendered judgment [partially] in favor of the plaintiff against PCM, POF, PIM, Schepis, Canelas, and Northeast in the total amount of . . . $5,422,540." (Internal quotation marks omitted.) Id., 401. Then, "[o]n January 4, 2017 . . . the court granted the plaintiff's motion to increase the [judgment] amount by $947,731 to a total of $6,369,313 . . . . On the same date, the court granted the plaintiff's motion for disclo-

sure of assets to assist with . . . securing . . . the additional [$947,731]." Id., 401–402.

Ultimately, "[t]he defendants appeal[ed], and the plaintiff cross appeal[ed], from the judgment of the trial court . . . [In this appeal], the defendants also [challenged] the [order] of the trial court granting the plaintiff's postjudgment motion to increase the amount of [the judgment] and [the order] granting the plaintiff's motion" to discover assets that could be used to satisfy the judgment, $947,731 of which had not been secured by a prejudgment remedy. *Alpha Beta I*, supra, 193 Conn. App. 389. This court disposed of that appeal in *Alpha Beta I*. See id., 389–90.

At a hearing before the trial court on January 12, 2017, the defendants stated that they would disclose assets sufficient to satisfy the increase in the judgment amount within thirty days. Accordingly, the court ordered the defendants to make these disclosures by February 14, 2017.

On March 31, 2017, the plaintiff moved the court for an order requiring the defendants to comply with its January 12, 2017 order and to impose sanctions against the defendants because they had failed to make the disclosures that the court had ordered them to make by February 14, 2017. In light of the defendants' failure to comply with its previous order, the court, on April 12, 2017, ordered the defendants to provide the plaintiff with documents spanning sixty-six categories. The court required them to provide these documents by May 3, 2017. The defendants agreed that they would provide these documents to the plaintiff by this date. Moreover, the court stated that, if the defendants failed substantially to comply with its order by May 3, 2017, then Schepis and Canelas would be required to appear for an examination. Instead of complying with this order, however, the defendants, on May 3, 2017, moved for a protective order in which they challenged, inter alia, the court's authority to order postjudgment asset discovery. The court denied this motion.

On that same date, the plaintiff served postjudgment interrogatories on the defendants, in accordance with General Statutes § 52-351b (a). The defendants' responses were due to the plaintiff on June 2, 2017. After the defendants failed to respond by this date, the plaintiff moved the court to order supplemental discovery and to compel Schepis and Canelas to appear in person before the court for an examination of judgment debtor (EJD), in accordance with § 52-351b (c) and General Statutes § 52-397.[4]

On August 21, 2017, the court granted this motion. The court also reiterated that the defendants were obligated to provide the plaintiff with the disclosures that the court previously had ordered them to make in its January 12 and April 12, 2017 orders. The court ordered

compliance by October 6, 2017. The court also advised the defendants that they should begin gathering these documents and responding "*immediately*" and that they should not return to court on October 6, 2017, claiming that they had insufficient time to comply with the court's orders.[5] (Emphasis added.) The defendants again failed to comply.

On October 20, 2017, the plaintiff moved for the court to order the defendants to produce the required documents and to appear for an EJD, and requested that the court impose sanctions against the defendants for failing to comply with the court's discovery orders. On November 6, 2017, the court ordered the defendants to provide the plaintiff with the disclosures that the court had ordered them to make in its January 12, April 12, and August 21, 2017 orders. The court ordered the defendants to comply with this order by November 16, 2017, or risk being held in contempt of court. The court also agreed to sanction the defendants and ordered them to reimburse the plaintiff for the cost of preparing the plaintiff's October 20, 2017 motion.[6] As for further sanctions, the court stated that it would "reserve decision on the need for [them] depending on the defendants' compliance with this order." The court also ordered "Schepis and . . . Canelas . . . to appear on November 22, 2017 . . . to be examined as [j]udgment debtors." The court later granted a motion by the defendants asking the court to move the deadline for document disclosures to December 8, 2017, and the date of the EJD to December 13, 2017.

By the time that the EJDs commenced on December 13, 2017, the defendants had provided the plaintiff with only a small fraction of the sixty-six categories of documents that they had agreed to make available pursuant to the April 12, 2017 agreement and that the court most recently ordered them to produce in its November 6, 2017 order.[7] The defendants told the court that they had not produced many of the documents that they were required to disclose because they did not have them in their possession.

Both Schepis and Canelas testified under oath during the EJD. Despite being sophisticated investors with significant assets, however, Schepis and Canelas claimed that they were able to recall little information about their finances. For example, when asked which accountant prepared his personal tax returns, Schepis represented that he could not remember who prepared them. Canelas provided similar answers concerning the tax returns about which he was asked. For example, he asserted that he did not know who had prepared the 2016 tax return for one of the entities that he controlled and operated with Schepis.

Schepis and Canelas were also asked about their sources of income and where they deposit their earnings. During his testimony, Schepis was presented with

a document purporting to show that he received a disbursement of $931,383 from his former attorney in September, 2015. Schepis claimed, however, that he could not recall receiving this large sum of money, even though he received it only two years prior. Schepis also represented that he could not remember receiving cash distributions in the past three or four years from the entities that he controlled and operated and claimed that he had not received a distribution from Pursuit Partners, LLC, "in quite a while." Moreover, he asserted that he did not know where he deposited earnings from these distributions when he was receiving them. Indeed, Schepis claimed that he did not have a checking account and could not remember the last time he had one.[8] Moreover, Schepis represented that he paid for everything in cash.

Canelas provided similarly evasive answers to questions about his personal finances. He claimed that he could not recall receiving a $776,000 disbursement from his former attorney and could not recall whether he received disbursements from entities that he controlled and operated. Asked whether he had an account into which he could deposit money, Canelas asserted that he could not recall. He also represented that he did not have a checking account and could not recall the last time that he had a bank account. In light of this representation, the plaintiff's counsel asked him how he retrieves cash when he needs it, to which he responded that he asks his wife for it, whom he described as being a stay-at-home mother who does charity work and is his "sole source of money." He also asserted that his wife pays his bills and that he does not.

On the same date as the EJD, the court, in light of the defendants' evasive and incredible responses during the EJD and their failure to provide the plaintiff with the documents that the court, in previous discovery orders, had required them to disclose, entered new orders to address these issues.[9] First, the court continued the EJD until February 6, 2018.[10] The court also ordered that, by December 22, 2017, Schepis and Canelas were to produce the following: "1. [f]ederal and state income tax returns for each of tax years 2015 and 2016 identifying the preparer(s)' name(s); 2. [a]n unredacted copy of [a document containing financial information from the defendants' prior counsel]; 3. [f]ederal and state income tax returns for the tax years 2015 and 2016, identifying the preparer's name, for (a) [POF], (b) [PCM], (c) [PIM], (d) Pursuit Partners, LLC, and (e) [Northeast]." Indeed, the court had, in three prior orders, commanded that the defendants produce the tax returns listed in its December 13, 2017 order. Additionally, the court ordered the defendants' counsel to "submit a responsive pleading" to the court's November 6, 2017 order requiring the defendants to provide the plaintiff with the documents that, on April 12, 2017, they agreed to make available to the plaintiff and had

been ordered to disclose several times. The defendants agreed to comply with this order by the December 22, 2017 deadline that the court imposed.

On January 2, 2018, the plaintiff moved for the court to order the defendants to comply with the court's December 13, 2017 order. In this motion, the plaintiff stated that the defendants had provided some, but not all, of the documents that the court's December 13, 2017 order required them to produce and that they had failed to submit a responsive pleading to the court's November 6, 2017 order, despite being required to produce all of these items by December 22, 2017.

The plaintiff then filed a second motion on February 13, 2018, in which it requested that the court order Schepis and Canelas to provide the information that they claimed that they could not recall during the EJD and impose sanctions for Schepis' and Canelas' conduct during the EJD. In addition, the plaintiff requested that, in light of the testimony that Schepis and Canelas did provide during the EJD and the defendants' failure to provide the plaintiff with documents that the court had previously ordered them to produce, the court compel the defendants to provide the plaintiff with supplemental disclosures covering ten categories of information. Some of the categories of documents requested in this motion pertained to documents that the court already had ordered the defendants to produce in prior orders, such as statements for securities accounts that either Schepis or Canelas owned, but the motion also contained requests for the defendants to produce documents covering new categories of information.

On March 8, 2018, the court ordered the defendants to "to identify . . . the preparer's name of the state income tax returns for the tax years 2015 and 2016, for (a) [POF], (b) [PCM], (c) [PIM], (d) Pursuit Partners, LLC, and (e) [Northeast], an[d] the preparer for the federal tax returns of Pursuit Partners, LLC." With respect to the ten categories of documents that the plaintiff asked the court to order the defendants to provide, the court ordered the parties to conference to attempt to resolve any issues with respect to the defendants' providing these documents. If, however, the parties were unable to resolve the issues, the court instructed the plaintiff's counsel to submit an affidavit describing the categories of documents that remained in dispute by March 22, 2018. The court also reserved its decision on the other orders requested by the plaintiff.

On March 22, 2018, the plaintiff's counsel submitted an affidavit to the court in which he averred that the defendants agreed to produce some, but not all, of the ten categories of documents that the plaintiff had requested in its February 12, 2018 motion. On April 4, 2018, the court, having reviewed the affidavit, ordered the defendants to provide the plaintiff with supplemental disclosures within the categories of documents that

the defendants' counsel agreed to produce during the conference with plaintiff's counsel by April 20, 2018.[11]

On April 24, 2018, the plaintiff's counsel filed an affidavit with the court in which he averred that the defendants had provided nothing in the way of compliance with the court's April 4, 2018 order. The court, on June 6, 2018, then ordered the "[p]laintiff . . . to submit a supplemental filing identifying the outstanding discovery by June 14, 2018, [and that the defendants] respon[d] to th[is] [supplemental] filing . . . by July 2, 2018. The court also ordered that "[a] hearing [be held] to consider an order for fees and [p]enalties . . . ." On June 14, 2018, the plaintiff submitted two affidavits in response to the court's June 6, 2018 order. In the first affidavit, the plaintiff's counsel averred that the defendants had only partially complied with the court's April 4, 2018 order, in which it ordered them to make supplemental disclosures to the plaintiff. In the second affidavit, the plaintiff's counsel sought an award of attorney's fees, averring that the plaintiff had incurred $31,610 in attorney's fees and $1258.05 in other litigation expenses preparing for and taking the December 13, 2017 EJD and attempting to obtain the defendants' compliance with the court's discovery orders.

In support of the requested attorney's fees, the plaintiff's counsel averred that he bills at an hourly rate of $400. He stated that he spent fourteen hours preparing for the December 13, 2017 EJD; 3.7 hours taking the December 13, 2017 EJD; 2.8 hours preparing the plaintiff's January 2, 2018 motion; 35.2 hours preparing the plaintiff's February 13, 2018 motion; and 1.5 hours arguing motions related to the defendants' noncompliance at a June 6, 2018 status conference.

In addition, the plaintiff's counsel requested that the plaintiff be awarded $8730 for the services of an attorney from Reed Smith LLP (Reed Smith), who served as the plaintiff's cocounsel. The plaintiff's counsel further stated that cocounsel from Reed Smith bills at an hourly rate ranging from $450 to $800 and engaged in 14.4 hours of work on the plaintiff's behalf.

Thereafter, the defendants filed their response to the plaintiff's affidavits. Notably, the defendants filed this response on July 19, 2018, even though the court ordered them to file it by July 2, 2018.[12] The defendants essentially made three arguments in their response. First, they argued that the award of attorney's fees that the plaintiff requested for preparing, attending, and taking the December 13, 2017 EJD was excessive. The defendants did, however, concede that the plaintiff should receive an award for some of the fees incurred for the EJD, stating that "*a reasonable award of attorney's fees related to the December 13, 2017 EJDs should be in an amount significantly less*." (Emphasis added.) Second, the defendants argued that the plaintiff should not be awarded attorney's fees for work performed after

January 5, 2018, because the defendants filed several motions opposing the plaintiff's discovery requests. Third, the defendants argued that the plaintiff should not receive the award of fees requested for the work of cocounsel from Reed Smith because this request of fees was "unreasonably excessive and duplicative." Importantly, in their response, the defendants *did not contest* that they had failed to comply fully with the court's discovery orders, as the plaintiff's counsel had averred in his June 14, 2018 affidavit.

On July 23, 2018, the court issued the order of sanctions that is the subject of the present appeal. The court's decision to sanction the defendants was predicated on two factual findings. First, "[t]he court [found] that an award of [attorney's] fees and costs [was] appropriate because [Schepis and Canelas] conducted themselves at the [EJD] on December 13, 2017, before the court with obvious dishonesty . . . ." Second, the court found that, after conducting themselves with "obvious dishonesty" at the EJD on December 13, 2017, the defendants "then . . . engaged in a continuous practice of disobeying the court's discovery orders."

Having made these findings and determined that an order of sanctions was appropriate, the court awarded the plaintiff $17,962.05, which amounted to $16,704 in attorney's fees and $1258.05 in litigation costs. The court calculated the attorney's fee portion of the award using an hourly rate of $360 for the hours that both the plaintiff's counsel and cocounsel from Reed Smith billed. Specifically, the court awarded: 3.7 hours, as requested, for attending and taking the December 13, 2017 EJD, stating that "[t]he court awards the fees requested because of the egregious duplicity displayed by the individual defendants at the EJD before the court"; 2.8 hours, as requested, for preparing its January 2, 2018 motion because "it represent[ed] an effort to assure compliance with a court order"; 30.2 hours of fees for the plaintiff's February 12, 2018 motion, deducting five hours from the 35.2 hours of fees that the plaintiff requested because these five hours were "spent on matters not caused by [the] defendants' inappropriate conduct"; and 1.5 hours, as requested, for the plaintiff's counsel's appearance at the June 6, 2018 status conference because "[t]he motions argued [at that conference] related to discovery and were necessitated by [the] defendants' [noncompliance] with court orders . . . ." Moreover, the court awarded the plaintiff attorney's fees for 8.2 hours of work by cocounsel from Reed Smith, an amount less than the plaintiff had requested. The court also did not award the plaintiff for the fourteen hours of work that the plaintiff's counsel claimed to have spent preparing for the December 13, 2017 EJD "because preparation for the [EJD] was required regardless of [the] defendants' subsequent conduct." This appeal followed.

The defendants thereafter filed a motion for articulation. Specifically, the defendants asked the court to articulate which discovery orders formed the bases of the court's finding in its July 23, 2018 order that the defendants had "engaged in a continuous practice of disobeying the court's discovery orders" and whether any of these orders were the bases for the court's March 8, 2018 order of sanctions.[13] (Internal quotation marks omitted.)

In its articulation, the court reiterated that it based its award of attorney's fees and costs in its July 23, 2018 order of sanctions on the number of hours and hourly rate that it deemed reasonable for the time that the plaintiff's counsel and cocounsel from Reed Smith had spent taking the testimony of Schepis and Canelas at the December 13, 2017 EJD, preparing the plaintiff's January 2 and February 12, 2018 motions, and participating in the June 6, 2018 status conference.

With respect to the March 8, 2018 order of sanctions, the court stated that the amount that it awarded the plaintiff in that order reflected the cost of preparing its October 20, 2017 motion, as stated in its November 6, 2017 order. The court also noted that its November 6, 2017 order "was directed to the defendants' failure to comply with [the discovery] orders previously entered in 2017 and restated what was outstanding, so that the [EJD] . . . would be productive." Additional facts will be set forth as necessary.

The defendants claim that the trial court's July 23, 2018 order of sanctions was improper because it constituted an abuse of discretion. In support of this claim, the defendants argue that the order of sanctions failed to meet the three requirements that a trial court must deem satisfied before imposing sanctions and that this court must analyze to determine whether the trial court's order constituted an abuse of discretion. See *Ridgaway* v. *Mount Vernon Fire Ins. Co.*, supra, 328 Conn. 71 (citing *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, supra, 257 Conn. 17–18). We disagree with the defendants.

We begin our analysis of the defendant's claim by setting forth our standard review of a court's order of sanctions for a party's failure to comply with that court's discovery order. Our Supreme Court has stated that, "a court may, either under its inherent power to impose sanctions in order to compel observance of its rules and orders, or under the provisions of [Practice Book] § 13-14, impose sanctions . . . . The decision to enter sanctions . . . and, if so, what sanction or sanctions to impose, is a matter within the sound discretion of the trial court. . . . In reviewing a claim that this discretion has been abused the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor

of its correctness. . . . [T]he ultimate issue is whether the court could reasonably conclude as it did." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Evans* v. *General Motors Corp.*, 277 Conn. 496, 522–23, 893 A.2d 371 (2006).[14] Our Supreme Court has described three criteria for evaluating whether a court's order of sanctions constitutes an abuse of discretion. See *Ridgaway* v. *Mount Vernon Fire Ins. Co.*, supra, 328 Conn. 71, citing *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, supra, 257 Conn. 17–18. Specifically, the court has stated that "a trial court properly exercises its discretion in imposing a sanction for a violation of a [court's discovery] order when (1) the order to be complied with is reasonably clear, (2) the record establishes that the order was in fact violated, and (3) the sanction imposed is proportionate to the violation." *Ridgaway* v. *Mount Vernon Fire Ins. Co.*, supra, 71. To be upheld on appeal, the order of sanctions must satisfy each of these three requirements. See *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, supra, 17–18. Having reviewed the court's order of sanctions, and on the basis of our review of the record, we conclude that the order satisfies each of these three requirements.

## I

## CLARITY OF THE DISCOVERY ORDER

The defendants first argue that the court's order of sanctions constituted an abuse of discretion because "there [was] neither a clear order nor [did the defendants violate] any such order." Specifically, the defendants assert that the court's order, which stated, in relevant part, that "Schepis and . . . Canelas . . . are to appear . . . to be examined as [j]udgment debtors" did not expressly "requir[e] [Schepis and Canelas] to answer any of the EJD questions differently than they had answered them." In essence, the defendants contend that the court's ultimate finding that Schepis and Canelas "conducted themselves . . . with obvious dishonesty" during the EJD could not serve as the basis for imposing sanctions, because the court's order compelling Schepis and Canelas to be examined as judgment debtors was unclear as to whether they were required to provide truthful testimony during the EJD. We are not persuaded.[15]

In order for a court to impose sanctions based on a party's failure to comply with the court's discovery order, "the [discovery] order to be complied with must be reasonably clear." *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, supra, 257 Conn. 17. Moreover, "even an order that does not meet this standard may form the basis of a sanction if the record establishes that, notwithstanding the lack of such clarity, the party sanctioned in fact understood the trial court's intended meaning. This requirement poses a legal question that we . . . review de novo." Id.

A requirement that a person give truthful testimony is so patently implicit in any order compelling a person to testify that the defendants' argument does not warrant much discussion. Indeed, witnesses providing truthful testimony in judicial proceedings is critically important to the court's ability to uncover the truth and ensure that justice is properly administered. See *State v. Simmons*, 188 Conn. App. 813, 831–32, 205 A.3d 569 (2019).

Here, Schepis and Canelas were under oath when testifying during the EJD, as required by § 52-397.[16] Thus, before testifying, Schepis and Canelas, swore to provide truthful testimony under the penalty of perjury. See General Statutes § 1-25.[17] Therefore, there is no doubt that Schepis and Canelas, having sworn to provide truthful testimony, understood that they were required to provide such testimony during their EJD.

II

FINDING THAT THE DEFENDANTS VIOLATED THE DISCOVERY ORDER

The defendants next argue that, even if the court's order compelling Schepis and Canelas to be examined as judgment debtors required them to provide truthful testimony during the EJD, the order of sanctions nevertheless constituted an abuse of discretion because the trial court improperly found that Schepis and Canelas had violated this order. In support of their argument that this finding was improper, the defendants assert that the court's underlying factual finding—that Schepis and Canelas "conducted themselves . . . with obvious dishonesty" during the EJD—was clearly erroneous. The defendants assert that "while the trial court certainly was within its discretion to discredit and disbelieve the defendants' EJD testimony, it could not use that disbelief to conclude that the opposite of their testimony had been established."

In so asserting, the defendants cite to cases in which our courts have stated that a finder of fact may not make a finding that is the opposite of what is stated in one's testimony if that finding is based *solely* on the fact finder's disbelief of that testimony. See, e.g., *Essex Ins. Co.* v. *William Kramer & Associates, LLC*, 331 Conn. 493, 519–20, 205 A.3d 534 (2019) ("the jury was not free to conclude from [the] rejection [of the testimony] that the opposite of the testimony [was] true" in absence of evidentiary basis in record for arriving at such conclusion); *State* v. *Alfonso*, 195 Conn. 624, 634–35, 490 A.2d 75 (1985) (jury could not conclude that defendant possessed marijuana from his denial of possessing it "without . . . evidence supporting . . . a conclusion" that he possessed it); *State* v. *Coleman*, 14 Conn. App. 657, 671, 544 A.2d 194 ("the jury is barred from directly inferring that a defendant was present at the scene of a crime from its finding that he was lying

when he denied his presence there"), cert. denied, 208 Conn. 815, 546 A.2d 283 (1988). In light of these cases, the defendants assert that the court's underlying factual finding was clearly erroneous because there was no basis in the record to support the court's conclusion that Schepis and Canelas provided dishonest testimony during the EJD other than the court's disbelief of their testimony. We are not persuaded.[18]

In order for a court to impose sanctions based on a party's failure to comply with the court's discovery order, "the record must establish that the [discovery] order was in fact violated." *Millbrook Owners Assn., Inc.* v. *Hamilton Standard,* supra, 257 Conn. 17. Our determination of whether an order for sanctions satisfies "[t]his requirement poses a question of fact . . . ." Id., 17–18. Thus, to determine whether an order for sanctions satisfies this requirement, we review the court's finding to determine whether it is clearly erroneous. Id., 18.

"A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Powell-Ferri* v. *Ferri,* 326 Conn. 457, 464, 165 A.3d 1124 (2017). In applying the clearly erroneous standard of review, we also are mindful that, "[b]ecause factual findings . . . are squarely within the trial court's purview, [they are] afford[ed] . . . great deference. . . . In short, the court, as fact finder, may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Citation omitted; internal quotation marks omitted.) *Keeley* v. *Ayala,* 328 Conn. 393, 419–20, 179 A.3d 1249 (2018).

First, we note that the defendants failed to preserve this portion of their claim for appellate review. See Practice Book § 60-5.[19] Indeed, the defendants failed to assert in their objection to the plaintiff's application for attorney's fees that the defendants' conduct at the EJD could not form the basis of the court's award of attorney's fees and litigation costs to the plaintiff because such conduct did not violate the court's order.

Nevertheless, even if we assume that the defendants properly preserved this portion of their claim for appellate review, we conclude that it is meritless. Indeed, contrary to the defendants' assertion, there was ample evidence in the record from which the trial court could reasonably have inferred that Schepis and Canelas "conducted themselves . . . with obvious dishonesty" during the EJD.

The following additional facts are relevant to this portion of the defendants' claim. During the EJD, Schepis and Canelas made representations, the veracity

of which were undermined by exhibits that the plaintiff attached to its February 12, 2018 motion and that its counsel attached to his June 14, 2018 affidavits. For example, during their EJD testimony, both Schepis and Canelas claimed that they did not have an IRA account. Postjudgment interrogatory responses from Fidelity Management Trust Company purported to show, however, that both Schepis and Canelas maintained IRA accounts. Moreover, both Schepis and Canelas asserted that they each had one motor vehicle in their households and that the vehicles were owned by their wives. Municipal tax records updated as of June 14, 2018, purported to show, however, that Schepis and Canelas were the sole taxpayers listed for several vehicles.

In addition, the plaintiff's counsel attached exhibits to his June 14, 2018 affidavit that undermined the veracity of Schepis' representation that he did not know which accountant he used to prepare his tax returns. First, the plaintiff's counsel submitted the deposition of Richard Bangs, who stated that the accounting firm with which he was employed had performed Schepis' accounting and tax preparation work for at least fifteen or sixteen years. Second, the plaintiff's counsel attached an e-mail exchange between Bangs and Schepis that occurred two months before the EJD and contained "Pursuit Partners" as the subject heading. In one e-mail, Schepis sent Bangs the K-1 form for Pursuit Partners, LLC. Then, in a subsequent e-mail, Schepis asked Bangs, "we will not owe anything for 2016, correct?" Finally, the plaintiff submitted to the court a letter from Bangs' accounting firm addressed to Schepis and his wife. The letter stated that their 2016 Connecticut income tax return was attached to the letter and that the firm "*prepared the return* from the information [Schepis and his wife] furnished [to the accounting firm] . . . ." (Emphasis added.)

In light of these exhibits, the contents of which purportedly contradict the testimony that Schepis and Canelas provided during the EJD, we conclude that the principle in our case law relied on by the defendants that a finding of fact cannot be based solely on the disbelief of testimony is inapplicable to the present case. Indeed, there was ample evidence in the record from which the court could reasonably have inferred that Schepis and Canelas "conducted themselves . . . with obvious dishonesty" during the EJD. Accordingly, we conclude that the court's finding that they violated its order was not clearly erroneous.

## III

## PROPORTIONALITY OF THE SANCTIONS TO THE VIOLATIONS

The defendants' final argument in support of their claim is that the trial court's order of sanctions was disproportionate to the defendants' violations of the

court's discovery orders that occurred after the December 13, 2017 EJD. In support of this argument, the defendants assert that the three factors used by our Supreme Court in *Yeager* v. *Alvarez*, 302 Conn. 772, 787, 31 A.3d 794 (2011), to determine whether an order of sanctions is proportionate to a party's violation of a court's discovery order weigh against concluding that the court's July 23, 2018 order of sanctions was proportionate to the defendants' failure to comply with the court's December 13, 2017 discovery order. We are not persuaded.[20]

Our Supreme Court has stated that "the sanction imposed [for violation of a court's discovery order] must be proportional to the violation." *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, supra, 257 Conn. 18. We review the proportionality of a sanction to the sanctioned party's violation for an abuse of discretion. Id.

"In reviewing the proportionality of the trial court's sanction, we focus our analysis on the [sanctioned party's] violation . . . . Our analysis of the [sanctioned party's] violation is guided in turn by the factors we previously have employed when reviewing the reasonableness of a trial court's imposition of sanctions: (1) the cause of the [sanctioned party's] failure to [comply with the court's discovery order], that is, whether it [was] due to inability rather than the [wilfulness], bad faith or fault of the [sanctioned party] . . . (2) the degree of prejudice suffered by the [nonsanctioned] party, which in turn may depend on the importance of the information requested to that party's case; and (3) which of the available sanctions would, under the particular circumstances, be an appropriate response to the disobedient party's conduct." (Citations omitted; internal quotation marks omitted.) *Yeager* v. *Alvarez*, supra, 302 Conn. 787; see also *Krahel* v. *Czoch*, 186 Conn. App. 22, 33–34, 198 A.3d 103, cert. denied, 330 Conn. 958, 198 A.3d 584 (2018). Importantly, when weighing these factors to determine whether the sanction is proportionate to the violation, "the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . . [T]he ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Krahel* v. *Czoch*, supra, 34.

Before assessing the trial court's order of sanctions using the factors set forth by our Supreme Court in *Yeager*, we first address the defendants' contention that this court, in assessing whether the July 23, 2018 order of sanctions was proportional to the defendants' practice of habitually failing to comply with the court's discovery orders, must ignore any improper conduct that they engaged in prior to December 13, 2017. In asserting that this court must cabin its proportionality analysis to conduct in which the defendants engaged

between December 13, 2017, and July 23, 2018, the defendants incorrectly characterize the conduct on which the court based its July 23, 2018 order of sanctions.

Indeed, in its order of sanctions, the trial court found that, after the December 13, 2017 EJD, the defendants "then . . . engaged in a continuous practice of disobeying the court's discovery orders." In its articulation, the court stated that its July 23, 2018 order "awarded a fee . . . for the effort of [the] plaintiff's . . . counsel to compel compliance with the *November 6, [2017] and December 13, [2017] orders* as discussed at the EJDs . . . ." (Emphasis added.) Importantly, the court also stated in its articulation that "[f]urther compliance with the document production ordered by the *November 6, 2017 and December 13, 2017 orders* required extensive effort on the part of the plaintiff and the court, with mandated meet and confer sessions and status conferences." Thus, the court acknowledged in its findings that the defendants' failure to comply with the court's orders *before* December 13, 2017, required the plaintiff to expend resources *after* December 13, 2017, to attempt to compel the defendants' compliance with these orders. Accordingly, the defendants' failure to comply with the court's discovery order before December 13, 2017, is relevant in assessing whether the court's July 23, 2018 order of sanctions was proportional to the defendants' practice of habitually failing to comply with the court's discovery orders.

Having resolved this underlying issue in the defendants' argument, we now assess whether the court's sanctions were proportionate to the defendants' failure to comply with the court's discovery orders in light of the three *Yeager* factors. Mindful of the significant discretion that the trial court is afforded in crafting an order of sanctions for a party's violation of its discovery order, we conclude, for the reasons that follow, that the three *Yeager* factors weigh in favor of concluding that the court's July 23, 2018 order of sanctions was proportionate to the defendants' violations of the court's discovery orders.

A

With respect to the first factor, the defendants assert that their "discovery efforts constituted a good faith effort to respond to and confront [the] [p]laintiff's overbroad discovery efforts, rather than a wilful disregard of the court's orders . . . ." In support of this assertion, the defendants point to their March 5, 2018 motion for a protective order and contend that they were attempting to prevent certain information from being revealed that was contained in the documents that the court ordered the defendants to disclose in its December 13, 2017 order. This assertion is unpersuasive for two reasons.[21]

First, at the December 13, 2017 hearing, the court ordered the defendants to file, no later than January 15, 2018, any motion for a protective order seeking to redact information from the documents that they were ordered to produce. The defendants, however, did not move for a protective order requesting redactions until March 5, 2018. Thus, the fact that the defendants moved for a protective order nearly two months after the court's deadline for filing such a motion contradicts their assertion that they made a good faith effort to comply with the court's December 13, 2017 order.

Second, although the court, on April 4, 2018, denied in part the defendants' March 5, 2018 motion for a protective order, it did permit some redactions to the documents that the defendants were ordered to provide.[22] Despite the court's *in camera* review of the documents, and its allowance for some redactions to protect certain information, the defendants *still* failed to provide all of the required documents, resulting in the court's decision to schedule a hearing on sanctions on June 6, 2018. The defendants' failure to provide the plaintiff with the documents that they were required to disclose, even after the court, per their request, reviewed these documents and permitted some redactions, undercuts their assertion that they made a good faith effort to comply with the court's December 13, 2017 order.

Contrary to the defendants' characterization of their effort to comply with the court's discovery orders, the defendants, in fact, habitually failed to comply with these orders. In its order of sanctions, the trial court found that the defendants' practice of disobeying its discovery orders was "continuous . . . ." Indeed, the defendants admit that, despite being ordered to produce certain tax returns in the court's December 13, 2017 order *and in three prior orders* dating back to April 12, 2017, the defendants, as of June 14, 2018, *still* had not disclosed all of the tax returns that the court had required them to make available.

Moreover, despite the court's April 4, 2018 order compelling the defendants to provide the plaintiff with certain supplemental disclosures by April 20, 2018, the plaintiff's counsel averred on June 14, 2018, that the defendants had failed to provide any documents to satisfy this order. The defendants do not contest this averment on appeal, nor did they dispute it in their objection to the plaintiff's application for attorney's fees. Having considered the defendants' continuous practice of failing to comply with the court's discovery orders, we conclude that the first factor weighs in favor of concluding that the court's July 23, 2018 order of sanctions was proportionate to the defendants' violations of the court's discovery orders.

B

Regarding the second factor, the defendants assert

that the plaintiff suffered minimal harm—if any—from their failure to comply with the court's discovery orders. In support of this assertion, the defendants point out that, by June, 2018, they "had complied in large part" with the court's December 13, 2017 order requiring them to provide the plaintiff with certain documents and to respond to the court's November 6, 2017 order. We are not persuaded.

Before addressing the harm that the plaintiff suffered as a result of the defendants' conduct, we first address the defendants' assertion that they substantially complied with the court's discovery orders. Indeed, in stating that they "complied in large part with the [court's discovery] orders," the defendants grossly misstate the extent to which they, in fact, complied with these orders. Although the defendants may have provided the plaintiff with most of the documents that the court's December 13, 2017 order required them to disclose, the defendants completely ignore—and, indeed, do not contest—that they failed to comply fully with the court's April 4, 2018 order, which required the defendants to provide the plaintiff with certain supplemental disclosures by April 20, 2018. Thus, contrary to their assertion, the defendants did not substantially comply with the court's discovery orders.

Having addressed the extent to which the defendants complied with the court's discovery orders, we now assess the harm that the plaintiff suffered as a result of the defendants' conduct. Relevant to this assessment is the harm that the plaintiff suffered as a result of the defendants' failure to comply with the court's discovery orders and, in the face of these violations, the cost that the plaintiff incurred in order to attempt to obtain the defendants' compliance with these orders. With respect to the harm that the plaintiff suffered as a result of the defendants' failure to provide it with certain documents that the court had ordered them to disclose, the plaintiff's counsel averred in his June 14, 2018 affidavit that these documents were pertinent to the plaintiff's ability to identify assets that could be used to satisfy the judgment, $947,731 of which had not been secured by a prejudgment remedy. The defendants do not contest this averment in their appellate brief. Thus, the defendants' failure to produce certain documents that the court had ordered them to disclose deprived the plaintiff of information that it needed to collect on the judgment.

The defendants' failure to comply with the court's discovery orders made it necessary for the plaintiff to move for the court to compel the defendants to comply with these orders so that the plaintiff could obtain the documents that it needed to identify assets that could be used to satisfy the judgment, $947,731 of which had not been secured by a prejudgment remedy. Indeed, in its order of sanctions, the court found that the defen-

dants' noncompliance with the court's discovery orders made it necessary for the plaintiff's counsel to prepare the plaintiff's January 2 and February 12, 2018 motions, in which the plaintiff asked the court to order that the defendants comply with the court's discovery orders. In addition, the court found that plaintiff's counsel's attendance at a June 6, 2018 status conference was "necessitated by [the] defendants' noncompliance with [the court's discovery] orders . . . ."

To attempt to compel the defendants' compliance, the plaintiff accumulated attorney's fees and other litigation costs. Thus, as a result of the defendants' failure to comply with the court's discovery orders, the plaintiff expended financial resources so that it could obtain the documents to which it was entitled and that it needed to identify assets that could be used to satisfy the judgment, $947,731 of which had not been secured by a prejudgment remedy. Having weighed the harm that the plaintiff suffered due to the defendants' failure to produce certain documents that they were ordered to disclose and the financial burden that the plaintiff shouldered in order to compel the defendants' compliance, we conclude that the second *Yeager* factor weighs in favor of concluding that the court's July 23, 2018 order of sanctions was proportionate to the defendants' failure to comply with the court's discovery orders.

C

Finally, with respect to the third factor—whether the sanction imposed is appropriate in the context of the case—"we bear in mind that [t]he primary purpose of a sanction for violation of a discovery order is to ensure that the [nonsanctioned party's] rights are protected, not to exact punishment on the [sanctioned party] for its allegedly improper conduct." (Internal quotation marks omitted.) *Yeager* v. *Alvarez*, supra, 302 Conn. 790. In light of this principle and the financial burden that the plaintiff suffered in order to attempt to compel the defendants' compliance with the court's discovery orders, we conclude that the court's order of sanctions was appropriate.

Indeed, the court's order of sanctions reimbursed the plaintiff for the attorney's fees and other litigation costs that it incurred in order to compel the defendants to provide it with certain documents that the court had ordered they disclose and that the plaintiff needed to obtain a remedy to which it was entitled. In the absence of the court's order of sanctions, the plaintiff unfairly would have borne this cost. Thus, the third *Yeager* factor weighs in favor of concluding that the court's July 23, 2018 order of sanctions was proportional to the defendants' violations of the court's discovery orders.

IV

CONCLUSION

Having reviewed the court's order of sanctions and

the record, we conclude that the court's July 23, 2018 order meets the three requirements for such orders described by our Supreme Court. See *Ridgaway* v. *Mount Vernon Fire Ins. Co.*, supra, 328 Conn. 71, citing *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, supra, 257 Conn. 17–18. Thus, we conclude that the court's order of sanctions did not constitute an abuse of discretion.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "Schepis and Canelas are individuals who reside in Greenwich . . . and who, together, formed, operated, and controlled all of the other defendants. At one point in time, the defendants cumulatively managed assets in excess of $600 million." *Alpha Beta Capital Partners, L.P.* v. *Pursuit Investment Management, LLC*, 193 Conn. App. 381, 390–91, 219 A.3d 801 (2019), cert. denied, 334 Conn. 911, 221 A.3d 446 (2020) (*Alpha Beta I*).

[2] In its appellate brief, the plaintiff claims that the defendants' appeal should be dismissed for lack of subject matter jurisdiction. In making this argument, the plaintiff asserted that the trial court's order of sanctions was an interlocutory order that did not constitute a final judgment. We disagree.

Generally, discovery orders, which include orders of sanctions based on a party's failure to comply with discovery, are not appealable final judgments. See, e.g., *Incardona* v. *Roer*, 309 Conn. 754, 760, 73 A.3d 686 (2013) ("prior to final judgment, we have jurisdiction to hear a challenge to an interlocutory order sanctioning a party for failure to comply with a discovery order only upon a finding of contempt for failure to comply with the order"). This appeal, however, was filed as an amendment to an existing appeal in accordance with Practice Book § 61-9. Subsequently, this court severed the claim in the present amended appeal from those brought and decided by this court in *Alpha Beta I*.

If an appeal from a final judgment already exists over which this court properly has jurisdiction, any subsequent rulings by the trial court in the underlying matter typically are reviewable by way of an amended appeal; see Practice Book § 61-9; and need not be final judgments themselves. See *RAL Management, Inc.* v. *Valley View Associates*, 278 Conn. 672, 687, 899 A.2d 586 (2006) ("[a]s a general rule, jurisdiction once acquired is not lost or divested by subsequent events" (internal quotation marks omitted)); see also *Friedlander* v. *Friedlander*, 191 Conn. 81, 84, 463 A.2d 587 (1983); *Young* v. *Polish Loan & Industrial Corp.*, 126 Conn. 714, 715, 11 A.2d 395 (1940). Therefore, because this court had subject matter jurisdiction over the defendants' claims concerning the merits of the underlying judgment of the trial court, it follows that this court maintains jurisdiction over the defendants' claim in the present amended appeal, even after severing this claim from those brought and decided by this court in *Alpha Beta I*. The plaintiff acknowledged the soundness of this reasoning at oral argument, indicating that it no longer sought to pursue its jurisdictional argument on appeal. In sum, we conclude that this court has subject matter jurisdiction to address the defendants' claims.

[3] In the underlying dispute with the plaintiff, Pursuit Partners, LLC (Pursuit Partners) was also a named defendant. See *Alpha Beta Capital Partners, L.P.* v. *Pursuit Investment Management, LLC*, 193 Conn. App. 381, 389, 219 A.3d 801 (2019) (*Alpha Beta I*), cert. denied, 334 Conn. 911, 221 A.3d 446 (2020). As stated by this court, however, "Pursuit Partners did not appeal from the judgment of the trial court and [was] not involved in [*Alpha Beta I*]." Id., 381 n.1. Like in *Alpha Beta I*, Pursuit Partners did not participate in this appeal, and our references to the defendants do not include it.

[4] General Statutes § 52-397 provides in relevant part: "Any judgment debtor, an execution against whom has been returned unsatisfied in whole or in part or who has failed to respond within thirty days to any postjudgment interrogatories served pursuant to section 52-351b, may be examined on oath . . . concerning his property and means of paying such judgment . . . ."

[5] Specifically, the court stated in relevant part: "[I]t is the court's intent that the defendant[s] work on [the] responses *immediately*. And the court states that, so that there is no claim that come September [29, 2017], they only had a week to respond. So [the defendants] are to begin preparing their responses now, but they don't have to actually disclose the information to the [plaintiff] . . . until October [6, 2017]. *But [the defendants] should*

*not come into the court on October* [6, 2017], *and say* [*that*] *they need more time, because they only had a week to prepare the responses.* They have over a month to prepare the responses, about seven or eight weeks." (Emphasis added.)

[6] In a March 8, 2018 order, the court stated that, "[w]ithout objection, the court will grant the request for attorney's fees, as directed by [the court's November 6, 2017] order . . . in the amount of [$5120], to be paid by April 4, 2018."

[7] The court noted the lack of production on the record at the EJD, indicating as follows:

"The Court: What I understand [the plaintiff's counsel] is saying is that all that has been produced are the redacted income tax returns. Is that right?

"[The Defendants' Counsel]: *That is, Your Honor.*

"[The Plaintiff's Counsel]: There are K-1s, so we do have some K-1s. I don't want to mislead you." (Emphasis added.)

[8] The following exchange between the plaintiff's counsel and Schepis that occurred during the EJD exemplifies the absurdity of Schepis' claim that he did not know where he would deposit large sums of money that he received:

"[The Plaintiff's Counsel]: Well, I mean . . . is it fair to say that you wouldn't be walking around with hundreds of thousands of dollars of cash in your pocket, right?

"[Schepis]: Possibly not.

"[The Plaintiff's Counsel]: Well, if you weren't going to walk around with the cash in your pocket, where did it go?

"[Schepis]: I don't remember.

"[The Plaintiff's Counsel]: Do you have any records anywhere that would refresh your recollection as to where moneys went?

"[Schepis]: No."

[9] After the plaintiff's counsel examined Schepis, the court reprimanded him for his evasive responses during the EJD in the following exchange:

"The Court: I think that would help us focus the inquiry a little bit here. So let's—so, Mr. Schepis, I assume your lawyer has explained to you what's going on here and what the rules are and why you're sitting here under oath and people are asking these questions that are uncomfortable questions and they are.

"But it's a situation where, you know, there are these judgments and these orders and the laws of Connecticut allow for this. I mean, they're not doing anything they're not permitted to do. And it is—and you are required to answer questions.

"[Schepis]: I understand.

"The Court: And if it appears that you're not answering truthfully, you know, just saying I don't recall doesn't end it because that may not seem credible.

"And you know you don't want to [be] found in contempt. I mean, I just want to say—and I'm not saying that's what's going to happen today. But General Statutes § 52-399 is called commitment of debtor. Commitment means you're going into a cell until you purge yourself of the contempt. Now, please, life's too short for that kind of thing.

"So it is somehow important to get through this and you know—let me put it this way, if you can't remember, you better find out, okay. That's what I'm saying. It really—you're under a big obligation here and there is an obligation to find out. Okay."

[10] On January 31, 2018, the plaintiff moved to continue the EJD until sometime after February 6, 2018, to which the defendants consented. It is unclear from the record if the EJD ever recommenced before the court entered its order of sanctions on July 23, 2018.

[11] Indeed, the order, in relevant part, provided: "The court has reviewed the affidavit of [the] plaintiff's counsel . . . regarding a discovery conference on March 20, 2018, with [the] [defendants'] counsel . . . as directed by the court. The affidavit describes several undertakings by [the defendants' counsel] on behalf of his clients to comply with some, but not all, of [the] plaintiff's discovery requests. The court directs [the defendants' counsel] to fulfill these undertakings on or before April 20, 2018, and requests [the plaintiff's counsel] to file an affidavit within seven days thereafter advising the court of any remaining discovery disputes requiring court intervention."

[12] On June 19, 2018, the defendants requested an extension until July 9, 2018 to respond to the June 14, 2018 affidavits of the plaintiff's counsel. There is no indication in the record, however, that the court ever addressed this motion.

[13] As stated previously, the court, in its November 6, 2017 order, stated

that it would sanction the defendants and would award the plaintiff the amount that it cost the plaintiff to prepare its October 20, 2017 motion. The court ultimately imposed this sanction by awarding the plaintiff attorney's fees in a March 8, 2018 order. In this order, the court stated that it was awarding these attorney's fees "[w]ithout objection . . . ." Moreover, the defendants do not challenge this order of sanctions in this appeal.

[14] Practice Book § 13-14 provides in relevant part: "(a) If any party has failed to answer interrogatories or to answer them fairly, or has intentionally answered them falsely or in a manner calculated to mislead, or has failed to respond to requests for production or for disclosure of the existence and contents of an insurance policy or the limits thereof, or has failed to submit to a physical or mental examination, or has failed to comply with a discovery order made pursuant to Section 13-13, or has failed to comply with the provisions of Section 13-15, or has failed to appear and testify at a deposition duly noticed pursuant to this chapter, or has failed otherwise substantially to comply with any other discovery order made pursuant to Sections 13-6 through 13-11, the judicial authority may, on motion, make such order as the ends of justice require.

"(b) Such orders may include the following . . .

"(2) The award to the discovering party of the costs of the motion, including a reasonable attorney's fee . . . .

* * *

"(c) The failure to comply as described in this section may not be excused on the ground that the discovery is objectionable unless written objection as authorized by Sections 13-6 through 13-11 has been filed. . . ."

[15] On appeal, the defendants argue only that the court's order compelling Schepis and Canelas to testify at the EJD was not reasonably clear. In doing so, the defendants do not claim that any of the court's orders compelling them to provide the plaintiff with certain documents were unclear. Thus, we do not address whether these orders were reasonably clear in this opinion.

[16] General Statutes § 52-397 provides in relevant part: "Any judgment debtor, an execution against whom has been returned unsatisfied in whole or in part or who has failed to respond within thirty days to any postjudgment interrogatories served pursuant to section 52-351b, *may be examined on oath*, in the court location where the judgment was rendered, concerning his property and means of paying such judgment, before any judge of the Superior Court or before a committee appointed by such judge. . . ." (Emphasis added.)

[17] Indeed, the oath administered to witnesses is as follows: "You solemnly swear or solemnly and sincerely affirm, as the case may be, that *the evidence you shall give concerning this case shall be the truth, the whole truth and nothing but the truth*; so help you God or upon penalty of perjury." (Emphasis added.) General Statutes § 1-25.

[18] On appeal, the defendants do not contest the court's other underlying factual finding—that, after the December 13, 2017 EJD, the defendants "then . . . engaged in a continuous practice of disobeying the court's discovery orders." Moreover, the defendants concede that, in June, 2018, when the court ordered that a hearing on sanctions be held, the defendants had not provided all the documents to the plaintiff that the court previously had ordered that they make available. Because the defendants do not contest the court's finding that they continually failed to obey its orders to provide the plaintiff with certain documents, we do not address it.

[19] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

[20] On appeal, the defendants do not address the award of attorney's fees for the 3.7 hours the plaintiff's counsel spent attending and taking the December 13, 2017 EJD in their analysis concerning the proportionality of the court's order of sanctions to their violations of the court's discovery orders. In assessing the proportionality of the sanctions imposed by the court to the defendants' violations, we note, however, that *all* of the violations that the court found had occurred are relevant. Thus, we reject the defendants' attempt to compartmentalize the court's order of sanctions into individual parts.

[21] In addition to the defendants' March 5, 2018 motion for a protective order, there are several other motions that the defendants reference in their appellate brief and in their objection to the plaintiff's application for attorney's fees that they assert support a conclusion that they were "litigating bona fide discovery disputes" in response to the court's December 13, 2017

order. (Emphasis omitted.) These motions, all of which the court denied, include: two motions to quash a subpoena; a May 16, 2018 motion for a protective order; an April 24, 2018 motion to reconsider the court's April 4, 2018 order, in which it granted the plaintiff's motion to permit the plaintiff to "share and disclose all postjudgment discovery" with Reed Smith; and an April 24, 2018 motion to reargue, in which the defendants asked the court to reconsider its decision to deny in part their March 5, 2018 motion for a protective order.

These motions, however, offer no support to the defendants' assertion that they were engaged in "litigating bona fide discovery disputes" in response to the court's December 13, 2017 order. (Emphasis omitted.) Indeed, the motions to quash a subpoena, the April 24, 2018 motion to reconsider concerning postjudgment discovery being shared with Reed Smith, and the May 16, 2018 motion for a protective order, unlike the March 5, 2018 motion for a protective order, do not challenge the *obligation of Schepis and Canelas* to produce the three categories of documents that the court described in its December 13, 2017 order. Moreover, the April 24, 2018 motion to reargue merely asked the court to reconsider its untimely March 5, 2018 motion for a protective order. Thus, we are not persuaded by the defendants' contention that these motions demonstrate that they were, in good faith, challenging the court's December 13, 2017 order.

[22] On April 24, 2018, the defendants moved for the court to reconsider its decision on the defendants' motion for a protective order. The court denied this motion on May 17, 2018.

————————————————————